NEW YORK, S. & W. R. CO. v. MOORE.

(Circuit Court of Appeals, Second Circuit. January 8, 1901.)

No. 31.

1. RAILROADS—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE.

One driving onto a railroad track just in front of a rapidly approaching train cannot be held guilty of contributory negligence as matter of law, it being impossible, because of obstructions, to see the train till the team was on the track, though he did not stop his team to listen; he having approached at a walk, and testified that as he approached the track he was listening for a train, and did not discover it until he was on the track, and that his horses, though afraid of cars, did not act as though they heard anything of the train.

**2. SAME—NEGLIGENCE.**
Where, by reason of obstructions, a train approaching a crossing cannot be seen by one driving till on the track, the fact that no gateman or warning signals are maintained at the crossing may be considered on the question of the railroad company's negligence.

**3. PHOTOGRAPHS—PROOF OF ACCURACY.**
The accuracy of photographs introduced in evidence may be proved by testimony other than that of the photographer producing them.

In Error to the Circuit Court of the United States for the Southern District of New York.

Leopold Wallach, for plaintiff in error.
G. A. Clement, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges

WALLACE, Circuit Judge. Of the assignments of error those most deserving consideration are the ones which raise the question whether, by reason of the contributory negligence of the plaintiff, the defendant was entitled to have a verdict directed in its behalf.

The action was brought to recover for injuries received by the plaintiff while crossing the railroad track of the defendant at its intersection with a highway in the village of Unionville, Orange county, N. Y. The plaintiff was proceeding along the highway from the west in a milk wagon, driving a pair of horses. His wagon was struck while crossing the track by a train of the defendant approaching from the south, and which was making for the railroad station, about 900 feet away. The railroad at that crossing runs north and south, intersecting the highway at a right angle, but at a short distance from the crossing at the south curves sharply to the eastward. Approaching the crossing from the west the view of the railroad to the southward is obstructed for a considerable distance. The highway ascends as it nears the crossing. Near the track, obstructing the view southerly, is a building known as a "feed store," and between the feed store and the railway track there is a switch track. At the time of the accident a box car was standing at the west side of the crossing on the switch track. The accident took place about 9 o'clock in the forenoon of a clear day.

Testimony was introduced in behalf of the plaintiff tending to show that the train was running much faster than usual; that its speed was 35 or 40 miles an hour; and that no whistle was sounded or other signal given of its approach. Several witnesses testified that in approaching the crossing from the direction in which the plaintiff was driving the railroad was hidden from view for a distance of 20 rods or further, and that a train coming from the south could not be seen until the horses were practically upon the track. Dr. Dennie testified as follows:

"If I am driving east, the view from the crossing of approaching trains on the railroad south of the crossing is obstructed in the center of the street, and I cannot see the train until I get there, nearly or about on the railroad track. I am speaking of the locality generally, independent of the box car."

Dr. Nugent testified as follows:

"I have occasion to go over the crossing, and did have at that time, several times a day. The view of that crossing, in approaching it, is obscured all the

way down from the corporation limits, half a mile perhaps. I watch the crossing very closely for self-preservation; and I think, with my carriage, when my horses' feet are two or three feet west of the west track, I can get a sight by looking that way, and I watch, because I do not want to be hurt. I could not say with reference to a car upon the switch. That would obstruct the view a little more."

The father of the plaintiff, who visited the scene shortly after the accident, testified as follows:

"I took an observation carefully to satisfy myself at that time,—to see what chance the boy had for his life, if any. That is the purpose I went for, and I looked, and that team had to be upon the track to see the train coming, with that car there. They had to be right on the track."

Mr. Clark, a farmer who saw the accident, testified:

"With the car upon that switch, in driving up from the west, the view would be further obstructed, and, under these circumstances, a person would have to be full on the track before a view could be had of the track and approaching train from the south."

According to the testimony of the plaintiff himself, he knew that the train was due at about the time he proposed crossing the track. He testified that he looked and listened as he approached; that he looked at his watch, probably 20 rods back, and found it was then 12 minutes past the usual time of the train; that his horses were on the walk at that time; that they were still on the walk when they reached the ascent, and walked up the incline; and that while proceeding up the incline he was listening for the train. He testified that his horses were afraid of the cars, one of them especially, and that they did not act as though they heard anything of the train; that they were "not the least bit scared as they walked up." He testified that the car on the branch switch was not over two or three feet from the highway, and that his horses were full upon the track when he discovered the train. The fireman upon the locomotive, a witness for the defendant, testified that when the train came around the curve he was in a position so that he could see the horses stepping upon the track, and the locomotive was at that time perhaps 60 or 70 feet away. The engineer of the locomotive, a witness for the defendant, testified that the fireman called his attention to the fact that there was something on the track, and he saw the team about 10 feet away.

Much testimony was offered for the defendant, of a very persuasive character, to the effect that an approaching train from the south could have been seen by a person coming from the west for a considerable distance after reaching a point 20 feet west of the west rail of the main track, and from that point easterly the rail of the main track could have been seen for a distance of 1,000 feet, even with a car upon the siding, as indicated by some of the testimony.

It seems too plain to require extended discussion that the trial judge did not err in refusing to direct a verdict for the defendant. He acted upon the well-settled rule that when the evidence is conflicting, and there are different inferences which may be drawn by different minds, the question of the contributory negligence of the injured party is one for the jury. If the jury believed the testimony on behalf of the plaintiff, the approaching train, because of

the obstructions in the way, could not have been seen by him until his horses were practically upon the track, when it was too late to escape a collision, and he could only discover its approach by his sense of hearing. If his testimony was true, he used all his faculties diligently, and did everything that any prudent man would have been likely to do while crossing the track, unless he should have stopped his horses to listen more perfectly. His testimony may be incredible, and it may seen unaccountable that he did not hear the noise of the approaching train; but the jury was at liberty to credit his narrative, and to weigh among the probabilities in its favor the exertion of that impulse of self-preservation which, in the case of a sober and prudent man, is always to be presumed. In approaching a railroad crossing the injured party is not to be deemed guilty of contributory negligence because he did not exercise the greatest degree of diligence which he could have exercised, but only if he fails to exercise such care as a prudent man approaching such a place would. Whether he ought to stop in a given case is a question for the jury to decide, in view of the circumstances developed.

The trial judge correctly stated the law in his instructions to the jury in these terms:

"When a traveler is approaching the track of a railroad, especially where there are obstructing buildings in the vicinity which interfere with his view, his duty is to proceed cautiously, to look, to listen, and, if the circumstances of the case require it, to stop, in order that he may listen more carefully before continuing his course."

In the recent case of Judson v. Railroad Co., 158 N. Y. 597, 53 N. E. 514, the court stated this to be the rule in the courts of nearly all the states in the Union. See, also, Improvement Co. v. Stead, 95 U. S. 161–168, 24 L. Ed. 403. It was for the jury to apply the instructions to the particular facts, and if they erred in finding that under the circumstances it was necessary for the plaintiff to stop in order to listen more attentively, because a prudent man would have supposed that the approaching train could be seasonably heard without doing so, the error is not one which it is within the province of an appellate court to correct.

The assignments of error in respect to the admission or rejection of evidence upon the trial are without merit. The accuracy of the photograph of the crossing introduced in behalf of the plaintiff was sufficiently established by other testimony, and it was not necessary to prove it by the photographer who produced it. The evidence that no gateman or warning signals were maintained at the crossing was admissible, in view of the peculiarly dangerous character of the crossing, and were facts which the jury were entitled to take into consideration in determining whether the defendant was negligent. Railroad Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485.

The exception was not well taken which is made the subject of the twelfth assignment of error. The question put to the witness Carr was a leading one, and was apparently excluded for that reason.

We find no error in the record, and the judgment is therefore affirmed, with costs.