(117 N. W. 537.)

---

L. B. PENDROY v. GREAT NORTHERN RAILWAY COMPANY.

Opinion filed April 22, 1908.

Rehearing denied September 12, 1908.

**Railroads — Accident at Crossing — Injury to Automobile — Contributory Negligence — Question for Jury.**

1. Action to recover damages for injury done to plaintiff's automobile by a collision with defendant's train at a public crossing. Plaintiff's daughter was driving the automobile, and the plaintiff and others were riding therein at the time of the accident. The proof shows that at the time of the accident and for some time prior thereto defendant's train crew was engaged in switching in its yards at the city of Towner where the accident occurred, but that plaintiff and his daughter, although they had been pleasure riding about the city for some time, did not know that such switching was being done. In approaching such crossing the view of the occupants of the car was obstructed by buildings and other structures. Plaintiff and his daughter testified that in approaching such crossing they looked and listened for trains, but heard none. Just prior to reaching the crossing the gear of the automobile was changed from high to low

speed, and the noise which it made was about the same as that of an ordinary lumber wagon going at the same speed, which was about five miles per hour. The train which collided with the automobile was being backed over this crossing in a westerly direction, the first car and the one which came in contact with the automobile being a flat car loaded with iron. *Held,* that the question of the contributory negligence of plaintiff and his daughter was properly submitted to the jury.

### Same — Instructions — Meaning of "Proximate Cause" and "Contributory Negligence."

2. A person in passing over a public railway crossing is bound to use care commensurate with the known and reasonably apprehended danger; but it is only in exceptional cases that a trial court is justified in taking from the jury the question of the exercise of such care. Under the evidence, it cannot be said as a matter of law that plaintiff and his daughter were guilty of contributory negligence in not stopping the automobile before making such crossing. Certain instructions as to the meaning of the terms "proximate cause" and "contributory negligence" examined, and *held* correct.

### Appeal and Error — Instruction — Prejudice.

3. The trial court charged the jury that "the act or omission must contribute, in order to be contributory negligence, to the happening of the act or event causing the injury, * * * and, if the act or omission merely increases or adds to the extent of the loss or the injury, it will not have that effect." This instruction had no application to the facts in the case, but its giving is *held* not prejudicial error.

### Railroad Crossing — Accident — Instructions.

4. Certain requests for instructions by defendant were denied, and properly so, as their giving in effect would have amounted to a directed verdict.

### Appeal and Error — Assignment of Error — Rules of Court.

5. Certain assignments of error predicated upon rulings of the trial court in the admission and rejection of testimony are deemed abandoned for the reason that they are not discussed or treated in the brief in accordance with rule 14 (91 N. W. 8) of this court.

### Witness Fees.

6. In its order retaxing the costs, the trial court allowed certain witnesses the sum of $10 per day for attendance. This was erroneous, and the judgment is modified accordingly by reducing such allowance to the sum of $2 per day.

Appeal from District Court, McHenry County; *Goss,* J.

Action by L. B. Pendroy against the Great Northern Railway Company. Judgment for plaintiff, and defendant appeals.

Affirmed.

*Arthur Le Sueur* and *Murphy & Duggan,* for appellant.

Where the view of one about to cross a railroad track is obstructed, he must stop and listen. West v. N. P. Ry. Co., 13 N. D. 221, 100 N. W. 254; Kniter v. Railway Co. 54 Atl. 276; Chicago, etc. Ry. Co. v. Crisman, 34 Pac. 286.

Plaintiff was guilty of contributory negligence. Houghton v. Ry., 58 N. W. 314; Brady v. Ry., 45 N. W. 1110; Shatto v. Ry., 121 Fed. 678; Seefeld v. Ry., 35 N. W. 278; Barnhall v. Ry. 33 So. 63; Ry. v. Holdem, 49 Atl. 625; Day v. Ry., 52 Atl. 771; Allen v. Ry. Co., 19 Atl. 105; Bond v. Railway Co., 76 N. W. 102; Shufelt v. Ry., 55 N. W. 1013; Haas v. Ry., 11 N. W. 216; Rogers v. Ry., 72 N. E. 945; Proper v. Ry., 99 N. W. 283; Cleveland Co. v. Heine, 62 N. E. 455; Fletcher v. Ry., 21 N. E. 302; Donnelly v. Ry., 24 N. E. 38; Debbins v. Ry., 28 N. E. 274; Marty v. Ry., 35 N. W. 670.

Court's definition of "proximate cause" and "contributory negligence" were erroneous. Reitveld v. Wabash R. Co., 105 N. W. 515; Banning v. Ry. Co., 56 N. W. 277; Kerr v. Topping, 80 N. W. 321.

*O'Connell & Donnely, Palda & Burke* and *Bossard & Ryerson,* for respondent.

Failure to stop and listen is not alone negligence. N. Y., S. & W. R. Co. v. Moore, 45 C. C. A. 21; Dougherty v. Chicago, etc. Ry., 104 N. W. 672; Guggenheim v. Lakeshore & M. S. Ry. Co., 33 N. W. 161; Union Pac. R. R. Co. v. Ruzicka, 91 N. W. 543; Shearman & Redfield on Negligence, section 477; Massoth v. Deleware Canal Co., 64 N. Y. 524.

Obstruction of view may impose on a railway company increased care and watchfullness, call for more signalling than law requires, and excuse a traveler who might otherwise be deemed negligent. Siegel v. Milwaukee R. Co., 48 N. W. 488; Oldenburg v. N. Y. Central R. Co., 26 N. E. 1021; Parsons v. N. Y. Central Ry. Co., 113 N. Y. 355, 21 N. E. 145; McDuffie v. Lake Shore R. Co., 57

N. W. 248; Petrie v. N. Y. Cent. R. Co., 66 Hun. 282; Fisher v. M. R. Co., 18 Atl. 1016; Baltimore R. Co. v. Walborn, 26 N. E. 207; N. P. R. Co. v. Austin, 12 C. C. A. 97; Kenny v. H. R. Co., 16 S. W. 837.

Injury presumed caused by omission of signals.   Huckshold v. St. Louis R. Co, 19 Mo. 548; Doyle v. Boston R. Co., 145 Mass. 385; Beisiegel v. N. Y. Cent. R. Co., 34 N. Y. 622.

Backing a train is not negligence, but a watchman should be on rear car to warn travelers.   Duame v. Chicago R. Co., 40 N. W. 394; Whalen v. Chicago R. Co., 44 N. W. 849; Bergman v. St. Louis R. Co., 1 S. W. 384; Hamilton v. Morgan's R. Co., 8 So. 586; Robinson v. Western Pac. R. Co., 48 Cal. 409; Chicago R. Co. v. Walsh, 41 N. E. 900; Ry. Co. v. Schuster, 7 S. W. 874; Chicago R. I. & P. Ry. Co. v. Sharp, 11 C. C. A. 337.

The court's definition of "proximate cause" was correct.   Shearman & Redfield, on Negligence, section 26; Oil Creek Oil Co. v. Keighron, 74 Pa. St. 320; Insurance Co. v. Tweed, 7 Wal. 52.

Also of "contributory negligence."   Shearman & Redfield on Negligence, section 94; Scheffer v. Ry. Co., 105 U. S. 249, 26 L. Ed. 1070.

Contributory negligence must be a proximate, not a remote cause. 2 Thompson on Neg. 1151; Wharton on Neg., section 323; Kline v. C. P. R. Co., 37 Cal. 400; Meeks v. Southern P. R. Co., 56 Cal. 513; Isbell v. N. Y. R. Co., 27 Conn. 393; Weymire v. Wolfe, 52 Iowa, 533; State v. M. R. Co., 52 N. H. 528; Dudley v. Ferry Co., 45 N. J. L. 368; Mark v. H. B. Co., 56 How. Pr. 108; Smithwick v. Hall & Upson Co., 12 L. R. A. 280, and note.

FISK, J.   This is an appeal from an order of the district court of McHenry county denying a motion made in the alternative for judgment notwithstanding the verdict, or for a new trial, and also from the judgment entered pursuant to the verdict of a jury.

Plaintiff's cause of action is based upon the alleged negligence of the defendant railway company in backing one of its trains of cars against plaintiff's automobile at a public crossing in the city of Towner.   The question of defendant's negligence and of plaintiff's contributory negligence and the extent of plaintiff's damages were submitted to a jury, and a verdict returned in plaintiff's favor for the sum of $350.   In addition to a general verdict, the jury returned answers to 12 interrogatories, as follows:

"(1) Was the automobile in question fully stopped momentarily before the same was run upon the passing track where the collision occurred? A. No.

"(2) Was the engine whistle blown a short time before the collision, and while the engine was approaching on the same track upon which the collision occurred? A. No.

"(3) Was the engine bell rung before the collision, while the engine was approaching on the track upon which the collision occurred? A. No.

"(4) Was the brakeman or any employe of the defendant company on the box car or on the flat car in question at the time or immediately before the collision between the train and automobile? A. No.

"(5) At how many miles per hour was the train approaching the crossing in question when the flat car collided with the automobile? A. About 10 miles per hour.

"(6) Were the air brakes applied before or after the collision with the automobile? A. After.

"(7) Was the engine reversed before or after the collision? A. After.

"(8) Would an ordinary reasonable, prudent man, familiar with the operation of an automobile, have attempted to cross the said railway track with obstructions to the view as were present at that time at the time plaintiff and Mattie Pendroy crossed them in said automobile without stopping the automobile to examine for any impending danger from passing trains? A. Yes.

"(9) Was the plaintiff or Mattie Pendroy, either or both, guilty of any negligence whatever in the operating of the automobile or negligent in any degree in operating the automobile upon the Great Northern Railway passing track, just before or at the time of the collision of the train and automobile? A. No.

"(10) Were the defendant's employes guilty of any negligence in the operation of the train in question at the time of this collision or immediately before the collision between the train and automobile? A. Yes.

"(11) Did the engineer or other employes of the defendant company do anything to cause injury to others which an ordinary prudent and reasonable man would not have done doing the same work, or omit to do anything to prevent injury to others in operating the said train at the time of the collision in question, or shortly before

and while approaching the place of collision with the automobile on the passing track, that ordinary prudent and reasonable men, doing the same work, would have done? A. Yes.

"(12) If you answer question No 11 in the affirmative, state fully of what such acts or omissions referred to in the said question consisted. A. Because they did not blow the whistle; because they did not ring the bell; because the air brakes were not applied at the proper time; because the reverse lever was not applied at the proper time; the brakeman was not on the flat car."

Thereafter defendant made a motion, as before stated, for judgment notwithstanding the verdict or for a new trial, which motion was denied, and judgment entered pursuant to the verdict.

Appellant has set forth 38 assignments of error relating to rulings in the admission and rejection of testimony, alleged errors in instructions to the jury and refusals to instruct, also to the ruling of the court in denying motions for nonsuit and for judgment notwithstanding the verdict, or for a new trial; also, the order of the court in retaxing and allowing certain costs. Such assignments as have been argued in appellant's brief will be noticed in the order presented. The assignments not argued will be deemed abandoned. Before noticing these assignments, a brief statement of the facts may be useful. On July 7, 1906, the plaintiff, with two of his daughters and other persons, was riding about the city of Towner in plaintiff's automobile, and while in the act of attempting to cross defendant's railroad tracks at the intersection of said tracks with Main street, in said city, said vehicle was struck by defendant's train, consisting of two cars and an engine, which were backing over such crossing from the east. Plaintiff's daughter, aged about 18 years, was driving the automobile, and plaintiff was ridng on the rear seat. The accident happened about 8 o'clock in the evening. The testimony tended to show that in approaching the crossing from the south the automobile was being driven at a speed of five or six miles per hour, and, when it reached a point within a few feet from the south track, the speed was changed to what is known as "low gear," which is a speed of less than five miles per hour. It was shown that the noise from the automobile as it approached the railroad tracks was about equal in volume to the noise made by an ordinary lumber wagon under the same conditions, and that by changing from the high to the low gear the noise was increased. On account of the grade crossing, it was necessary to change the engine to low

gear. At the east of Main street, and on the south side of defendant's right of way, and along its south track, there were numerous obstructions to the view, consisting of elevators, elevator sheds, engine house, stockyards, etc. These structures and objects were upon the railroad station grounds. There were also other structures just south of said right of way and east of Main street, consisting of lumber yards and buildings, all of which structures and objects to a large extent obstructed the view to the persons in said automobile as they approached said crossing just prior to the accident. There were four tracks crossing Main street, designated as the "industry" track, a "side" track, "passing" track, and "main" track. The collision occurred on the passing track, being the third track from the south. It is 13½ feet from the center of the most southerly track to the center of the next track to the north, and from the latter point to the center of the track where the accident occurred is 14 feet. Certain freight cars were standing on the southerly track and on the easterly portion of Main street, and extending continuously at a distance of about 500 feet to the east. The car which stood on the easterly side of Main street in no manner obstructed traffic over the crossing. Flat cars approaching such crossing from the east were entirely hidden from view. Upon the evening in question, and for about an hour just prior to the accident, one of defendant's train crews was engaged in switching cars in the yards, and at the time of the accident defendant's engine was engaged in backing a couple of cars westerly over the crossing, the most westerly car being a flat car loaded with iron, and the other a box car. Numerous persons in the vicinity of the crossing heard the noise caused by the switching of the cars aforesaid. The testimony was conflicting as to the speed the train was being backed at the time of the accident, but 12 miles per hour was the probable speed. Both the plaintiff and his two daughters testified that, as they approached the railroad, they looked and listened for trains, but neither saw nor heard any. Plaintiff testified that it was impossible to see the approaching train until they had passed over the south track. As the automobile was passing down Main street, towards the tracks just prior to the accident, certain spectators who heard the approaching train endeavored to attract the attention of those in the car, but were unsuccessful. Plaintiff and the other occupants of the automobile had been riding around town for some time prior to the accident, and had crossed the defendant's tracks

at said place, but the plaintiff's daughter Mattie testified that she did not know that defendant's train crew was switching cars in defendant's yard prior to the accident.

As stated by appellant's counsel, "the important question involved upon this appeal is whether or not plaintiff is barred from recovery because of contributory negligence." The question of the defendant's negligence as settled by the verdict of the jury is not controverted.

It is strenuously insisted by appellant's counsel that, under the evidence, the driver of the automobile, as well as the plaintiff himself, was a matter of law guilty of negligence which bars his recovery. They contend that, on account of the obstructions to the view of the occupants of the automobile, it was incumbent upon plaintiff and his daughter to stop and listen for trains before attempting to make the crossing, and counsel cite and rely upon, as controlling in their favor, the case of West v. N. P. Ry. Co., 13 N. D. 221. 100 N. W. 254. The facts in that case are clearly differentiated from the facts in the case at bar. In that case it was held as a matter of law that plaintiff's servant, who was the driver of the team which was killed, was guilty of contributory negligence in attempting to cross defendant's tracks ahead of the train which he knew was coming, and must necessarily have been very close to the crossing at the time of the accident. In narrating the facts it was there said: "Frank Hayes, the driver of the team, * * * was familiar with the crossing on Lamborn avenue and the conditions above described. * * * He saw a train approaching on the main track about 1½ miles north. He went into the house, stopped there not over a minute, came out to the street where the team was standing, turned it around, and started it east towards the track. He drove the team on a trot clear down to and onto the track. When he crossed the west side of Chicago avenue, he looked north but did not see the train. He knew when he could not see it that it was very close to the crossing; knew it had not yet crossed; knew it was approaching, but thought from where he had first seen the train he had time to get over the crossing, and so did not slacken the horses' speed at all until they struck the track. As he was driving he looked and listened for the train. The wagon he was driving was an ordinary lumber wagon. * * * It is plain that Hayes was guilty of gross negligence, and that his negligence was the direct cause of the accident, and that the negligence of the appellant's trainmen

in the particulars mentioned could furnish no excuse or justification for the reckless act of Hayes in attempting to cross in front of the approaching train. From the time Hayes crossed Chicago avenue until he reached the track, he knew all view of the train would be obstructed, and that he could not gauge its exact distance from the sense of sight, but must rely upon the sense of hearing alone. When 127 feet from the crossing, with his mind and attention fixed upon the fact that the train was approaching; with ocular proof that it had traveled from a point 1½ miles north to a point less than 1,380 feet from the crossing since he had first seen it less than three minutes before, and if the rate of speed was maintained it would be on the street in less than one minute; with knowledge that he could not see the train again until it emerged from behind the buildings and appeared at the crossing towards which both the train and his team were hurrying, that a stop of a minute at most would let it pass; with full knowledge of the danger of attempting to drive across in front of a train approaching at such a rapid speed and dangerously near—he took no precaution for his safety, but hastened on as if in a race to see which could first pass the point of intersection. The trains were not used to stopping at the crossing. He knew this because he relied upon the bell or whistle to warn him when the train would get to the crossing. The erections which obstructed his view of the train also prevented the train crew from seeing him. It was impossible, and he knew it would be impossible, for the train crew to see him on the crossing in time to stop the train and avoid a collision. * * * Hayes voluntarily and unnecessarily put himself and team in a place of known danger on the track in front of the train, and by so doing took the risk of accident. * * *" It was there held as a matter of law, under the facts aforesaid, that the failure to ring the bell or sound the whistle was not the cause of the accident, as the driver of the team had actual knowledge of the train's approach in ample time to have avoided the accident, and he knew without sound of bell or whistle all that he could have known had the alarm been sounded, and that under the circumstances it was his duty to stop and listen before venturing on the tracks, and that his failure so to do was negligence as a matter of law. The facts in the case at bar are widely different from those in the case relied upon. In the case at bar, testimony was introduced tending to show that plaintiff and his party had been riding around Towner during the evening, and had

not seen any train or engine in the yards; that as they came down Main street to a point where they could view the track between the two elevators they looked, and saw no train coming; that as they approached the track, and when about ten feet south of the southerly track, the gear of the automobile was changed from high speed to low speed, and at this time they were listening for any sound of a train. The driver of the automobile testified that she neither saw nor heard any signs of the train and proceeded to cross the track.

Under these facts, was it contributory negligence as a matter of law not to have stopped the automobile before making the crossing in order to look and listen for approaching trains? Can it be said as a matter of law that a prudent person, under the like. circumstances, would have stopped the automobile for the purpose of looking or listening for the approach of trains?    We think these questions must be answered in the negative.   While it doubtless is true that on account of the obstructions to their view the occupants of this automobile were in duty bound to exercise a higher degree of care for their safety than otherwise would have been required had such obstructions not existed, still we believe that, under the weight of authority · and the better-considered cases, they cannot be · held guilty of contributory negligence as a matter of law merely because they did not stop and listen before crossing the defendant's track. A person is bound to use care commensurate with the known or reasonably apprehended danger; but it is only in exceptional cases that a trial court is justified in taking from the jury the question of the exercise of such care.   The fact that, if the automobile had been stopped, the occupants might have heard the approaching train, and thus have avoided the accident, is not decisive of their negligence.   Fair-minded men might honestly differ, under all the facts as disclosed by the evidence, whether the exercise of such precaution was exacted of them.   In the case of Coulter v. G. N. Ry. Co., 5 N. D., 568. 67 N. W. 1046, this court held that the question of plaintiff's contributory negligence was for the jury, and not for the court, to decide.   This was a crossing case, and the facts disclosed that plaintiff at about dusk in the evening drove a team and wagon over a public crossing, and was struck and injured by a passenger train.   The proof showed that a heavy snowstorm was raging at the time, which probably obstructed plaintiff's view of the approaching train.   Plaintiff testified that he looked and listened

but did not stop. The headlight on the engine was lighted, and there was no obstruction to plaintiff's view aside from the snow-storm. If he had stopped his wagon, it is apparent that he could have heard the approaching train, yet the court, as before stated, refused to hold as a matter of law that plaintiff was guilty of contributory negligence. In the recent case of Schwanenfeldt v. C., B. & Q. Ry. Co. (Neb.) 115 N. W. 285, the plaintiff, who was driving across a railroad track on a public street in a city, was run into by a backing train, and, in disposing of the question of plainriff's contributory negligence, it was said: "It appears from the evidence that the city ordinances restricted the speed of trains on this track to four miles an hour, and required warning to be given of the approach of trains by the ringing of the engine bell and the blowing of its whistle; that the train in that case was being backed up at the rate of of five or six miles per hour; that the engine was so far away from the car that became the front of the moving train as to make the signal of its approach therefrom of little advantage; that no such signal was heard by the plaintiff or his companion; and that nothing else was done to warn travelers of the approach of the train. The plaintiff was approaching on an upgrade at a jog trot, and at a speed estimated by the witness Drake of four miles an hour. It was not possible for him to see an approaching train until he passed the lot line and was within 17 feet of the track, so that his horse's head would be very nearly at the point of contact with the passing car at the earliest instant at which the train became visible to him. To say that this evidence establishes the contributory negligence of the plaintiff as a matter of law, we must hold, first, that the plaintiff should in the exercise of ordinary prudence, after the moving train came into view, have stopped his horse or jumped from his wagon in time to avoid the collision; or, second, that it was incumbent upon him to stop and look for an approaching train before he drove into the street. It seems to us that the question whether he might have stopped his horse in time or jumped from the wagon, or otherwise avoided the collision, after coming in view of the same, was one about which different minds might honestly disagree, and therefore proper to be submitted to the jury. * * * We think that different minds might honestly draw different conclusions as to whether plaintiff was guilty of any negligence after arriving at a place where he could see the approaching train. We are not prepared to hold as a matter

of law that it was incumbent upon the plaintiff to stop and look before entering upon the street. The rule that a driver must stop and listen and look before crossing, when approaching a railroad, at an ordinary crossing, has not been adopted in this state. * * * We think the plaintiff was justified in relying upon the lack of warning of an approaching train, and that a jury might well hold that ordinary diligence, as well as a due regard for human life and limb, requires a railroad company, while using the public streets of a city, to give adequate notice of the approach of its trains, and that it would not be unreasonable to say that, in a case where it was backing trains so that the signal from the engine would be ineffective, such trains should be preceded by a flagman, or other means taken to warn the passers-by of their approach." In another place in the opinion it is said: "The question of negligence and contributory negligence is frequently a complex and difficult one, which can only be established by inferences drawn from primary facts. The proneness of human minds to differ in the observation of primary facts increases in geometrical ratio when it becomes necessary to draw inferences therefrom; and whether certain conduct constitutes negligence is usually held to be a question peculiarly suitable to be submitted to a jury. * * * That the degree of caution to be exercised by the plaintiff should have been proportioned to the degree of danger he should have anticipated will be generally admitted. In approaching this track, the plaintiff was charged with taking account of the extent and character of the danger; but we think he was not required to anticipate that the defendant would operate a train upon this track in a negligent manner, considering all the surrounding conditions, nor fail to give such warning of its approach as ordinary prudence demanded."

It would serve no useful purpose to review or cite the great number of authorities upon this question, and we shall content ourselves by a mere reference to a few of such cases. N. Y. S. & W. R. Co. v. Moore, 105 Fed. 725, 45 C. C. A. 21; Dougherty v. C., M. & St. P. Ry. Co., 20 S. D. 46, 104 N. W. 672; Guggenheim v. Railway Co., 66 Mich. 150, 33 N. W. 161; Union Pac. R. R. Co. v. Ruzicka, 65 Neb. 621, 91 N. W. 543. 7 Am. & Eng. Enc. Law, pages 427-436, contains an accurate and clear statement of the rule of law here involved, with copious citations of authority. We quote therefrom in part as follows: "At highway crossings a railway company is bound to exercise ordinary care to avoid in-

juring persons upon the crossing; and the duty of persons using the crossing is to exercise the same kind of care. Those who attempt to cross a railroad track at a public highway crossing must exercise ordinary care, in view of all the surrounding circumstances, to avoid receiving an injury by collision with trains, but, in the very nature of things, the standard of such care cannot be absolutely fixed. In some jurisdictions, however, it is held that a failure to stop, look and listen before entering upon a railway track is not merely evidence of negligence, but is negligence per se, and, as such, will bar a recovery, unless it affirmatively appears that it did not proximately contribute to the injury. And so stringent is the rule in Pennsylvania that, when a driver cannot otherwise determine whether a train. is coming, it seems he must get out and go forward to the track before attempting to cross with his vehicle, or take the risk of being held guilty of contributory negligence. But in other jurisdictions such a precaution is not necessary to constitute ordinary care; and the general rule is that a person about to cross a track must bear in mind the dangers attendant upon crossing, and vigilantly use his senses of sight and hearing in the endeavor to avoid injury. And if the traveler looked and listened, or did all that a prudent man would have done under the circumstances, it will not be said as a matter of law that he should have stopped; nor will a failure to stop, look, and listen be held negligence when the circumstances were such that an observance of these precautions would have been unavailing as a guard against injury. Hence a failure to stop, look, and listen is not contributory negligence per se. The traveler, however, is rigidly required to do all that care and prudence would dictate to avoid injury, and, the greater the danger, the greater the care that must be exercised to avoid it. And where because of physical infirmities, darkness, snow, fog, the inclemency of the weather, buildings, or other obstructions and hindrances, it is more than usually difficult to see or hear, greater precaution must be taken to avoid injury than would otherwise be necessary; and, under such circumstances, there can be no excuse for a failure to adopt such reasonable precautions as would probably have prevented the injury."

Our conclusion upon this phase of the case is, in brief, that under all the circumstances surrounding the plaintiff and the other occupants of the car, and in view of the testimony that they did not know of the switching that was going on in the defendant's yards

at said place on the evening in question, and that they looked and
listened just before attempting to make the crossing for the ap-
proach of trains and neither saw nor heard any, the trial court did
not err in holding that it was within the province of the jury to say
whether plaintiff and his daughter at and just prior to the accident
were in the exercise of such care as an ordinarily prudent person
would be expected to exercise under the like circumstances. In
other words, it cannot be said as a matter of law that they, or
either of them, were guilty of contributory negligence.

Appellant next complains of the trial court's definition of "prox-
imate cause," and also of the meaning of "contributory negligence."
The jury was charged "that contributory negligence meant the
want of the exercise of ordinary care which proximately causes
the injury complained of." They were also charged that "proxi-
mate cause, within the meaning of the definition of the instruction
of the court, is such a cause as operates to produce particular con-
sequences without the interference of any independent, unforseen
cause, without which the injury would not have occurred; or, in
other words, proximate cause is the true, probable  and  natural
cause." Appellant contends that there was prejudicial error in
these instructions. They argue that the jury was told, in effect,
that unless plaintiff was guilty of negligence that proximately caused
the injury he was entitled to recover. They say, "If plaintiff's neg-
ligence and acts, combined with the negligence and acts of de-
fendant, were responsible for the collision, still, under this charge,
the jury must find for plaintiff." In other words, they contend
that the instructions in effect informed the jury that, in order to
bar plaintiff's recovery, the contributory negligence must have been
the immediate and sole cause of the accident, and they cite and
rely on Reitveld v. Wabash R. Co., 129 Iowa, 229, 105 N. W. 515,
where, in speaking of a similar instruction, it was said: "This
was erroneous in the form in which it was given, in that it virtu-
ally announced the rule of comparative negligence which does not
prevail in this state. Of course, the plaintiff's negligence must be
such as contributes proximately to the injury; but, if it does so in
whole or in part, in any manner or in any degree, there can be no
recovery on his behalf." The case just quoted from no doubt states
the correct rule regarding contributory negligence and the effect
thereof upon plaintiff's right of recovery, but the court was there
dealing with the question of proximate cause as applied to contri-

butory negligence, while in the case at bar the trial court gave the above definition of the term "proximate cause" in connection with the instructions regarding defendant's negligence. We have examined the entire instructions with much care, and are agreed that the same, when taken as a whole, contain a correct definition of proximate cause and of contributory negligence and of the rules of law applicable thereto. When the instructions are considered as a whole, we do not think it can be said that the jury was misled regarding the rule of contributory negligence. It is true that in one part of the instructions the court erroneously charged the jury "that contributory negligence is a want of the exercise of ordinary care which proximately causes the injury complained of." But later in the charge the jury was correctly instructed as follows: "I charge you that the act or omission must contribute, in order to be contributory negligence to the happening of the act or event causing the injury." And earlier in the instructions the jury was properly instructed that, if the plaintiff or his daughter was actually guilty of negligence which contributed to the accident then they must find for the defendant. And still in another place in the instructions the jury was told, in effect, that plaintiff and his daughter, in order not to have been guilty of negligence, must have operated the automobile in the manner that a reasonable and ordinarily prudent person would have operated it under the like circumstances, and that they should have taken the same precaution in crossing the track that an ordinarily prudent and reasonable man would have taken under the same circumstances, and, if the plaintiff and his daughter did observe such caution and did so act, they were not guilty of negligence. If they did not so act, they were guilty of negligence, and, if the plaintiff himself or his daughter, or either of them, were actually guilty of negligence in the operation of the machine at the time of the collision, or immediately prior thereto, or in crossing at the time shown by the evidence in this case, then the plaintiff cannot recover, and the verdict should be for the defendant. In view of these explicit instructions, it is difficult to see how the jury could have been misled by the giving of that portion of the instruction complained of.

Appellant excepted to that portion of the charge to the jury as follows: "I charge you that the act or omission must contribute, in order to be contributory negligence, to the happening of the act or event causing the injury, and, if the act or omission merely in-

creases or adds to the extent of the loss or the injury, it will not have that effect." It is said that the foregoing had no application to this case, and tended simply to mislead and confuse the jury. We think counsel are clearly correct in their contention that said instruction was inapplicable to the case, but we fail to see how it could have misled or confused the jury. The first portion thereof was a correct statement of the law, but the latter clause was wholly inapplicable to the facts as disclosed by the evidence. There was no claim nor suggestion that the entire damage done to the automobile was not caused solely by the collision; in other words, it was not contended that plaintiff, by any fault of his own, aggravated the consequences of the injury, but the contention was that he contributed directly to such injury by his own or his daughter's negligent act, and hence there was no basis for the instruction as given. Its giving, however, was not prejudicial error.

Appellant predicates error upon the refusal to give certain instructions requested by it. Without setting out such requests in this opinion, it is sufficient to say that they were properly denied. The first request had no support in the evidence, and each of them amounted, in effect, to a directed verdict upon the ground of contributory negligence, and, as before stated, this question was properly one for the jury to determine.

Numerous alleged errors are complained of in the admission and rejection of testimony, but the manner in which they are presented in appellant's brief does not require us to notice them. Rule 14 (91 N. W. 8) of this court provides that the brief shall contain "an assignment of errors, which need follow no stated form, but must in a way as specific as the case will allow, point out the errors objected to, and only such as he expects to rely on and ask this court to examine. * * * In the body of his brief appellant shall present his reasons in support of each error assigned, with a concise statement of the principles of law applicable thereto with authorities supporting the same, treating each assignment relied upon separately, and such errors as are merely assigned and not supported in the body of the brief by reasons or authorities will be deemed to have been abandoned." In the preparation of their brief counsel for appellant has failed to comply with the foregoing rule, and hence we refrain from noticing the assignments upon which these alleged errors are predicated.

This brings us· to appellant's last assignment of error, which challenges the correctness of the order retaxing the costs in the court below. It is contended in brief that certain witness fees were improperly taxed as follows: Anton Strand, $8.10; T. H. Smith, $46.50; Frank Swickard, $24.50. As to the fees taxed for the witness Strand, we think the order complained of was correct, but, as to the fees of Smith and Swickard, the order was clearly erroneous, as $10 per day was taxed for these witnesses. We know of no law permitting the taxation of these witness fees in excess of $2 per day, and the judgment should therefore be modified by deducting therefrom the sum of $40, and, as thus modified, the judgment appealed from will be affirmed. All concur.