JAKE WARD BATCHELOR, Administrator of the Estate of B. W. Batchelor, Deceased, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 26 September, 1928.)

**1. Railroads—Operation—Injuries to Persons on Track—Negligence— Warnings, Watchmen, etc.**

In an action against a railroad company to recover damages for a personal injury alleged to have been negligently inflicted by a collision with defendant's train at a country grade crossing of a county highway with defendant's railroad track, evidence that the defendant did not maintain a watchman, gates, or signal gongs at the place is not evidence of its actionable negligence when there is no evidence that such was necessary owing to unusual dangerous conditions existing at this particular place, such as obstructions to conceal the approach of trains, and where the evidence tends only to show that all the usual signs had been placed there, signals or warnings given, by the engineer, and the view was clear and unobstructed, and that the defendant was not otherwise negligent, a judgment as of nonsuit is properly entered.

**2. Same—Evidence—Last Clear Chance.**

Where the question involved in an action for damages against a railroad company for the negligent killing of plaintiff's intestate by a collision at a highway crossing is whether the defendant's engineer should have stopped his train after the collision in time to have avoided the killing, evidence of a witness who had had experience as a fireman, that the train could have been stopped within the distance after applying the brakes, but that he did not have knowledge as to the time required to

apply the brakes is but a conjecture, and no sufficient evidence to be submitted to the jury in the absence of legal evidence as to the time it would have taken to apply the brakes.

**3. Evidence—Hearsay—Res Gestæ.**

The declarations of a party immediately after an accident are not admissible in evidence as a part of the *res gestæ* when it appears that the declaration was a narration of past occurrence rather than the facts talking through the party.

CIVIL ACTION, before *Midyette, J.,* at April Term, 1928, of NASH.

The plaintiff is the administrator of Ward Batchelor.

The evidence tended to show that plaintiff's intestate was a successful farmer, about 64 years old, and that on or about 22 December, 1924, he was returning from Nashville to his home and was driving his automobile. The road upon which plaintiff's intestate was traveling, runs parallel with the right of way of defendant railroad company for some distance until it gets about 150 feet from the crossing. Plaintiff's intestate was traveling west, and the train of defendant was traveling east. Hence a traveler on this highway, approaching the crossing, would be facing the train until he got about 150 feet from the crossing. At a point in the road forty or fifty feet from the crossing the traveler, by merely looking up, could have seen the train 125 yards off. At a point in the road 60 feet from the crossing "there is no obstacle or obstruction to anybody's sight for 275 yards up the track." There was a North Carolina stop-law sign at the crossing. There was also a "Stop, Look and Listen" sign. On the date specified, plaintiff's intestate approached the crossing traveling at a rate of speed estimated between 15 and 20 miles an hour. He was familiar with the crossing by reason of the fact that he had crossed the track of the defendant at that point four times a day for ten or twelve years. The evidence further tended to show that the deceased was also familiar with the schedule of trains. The evidence further showed that the train gave the proper signals for the crossing.

The highway crosses the railroad track diagonally. An eye witness, describing the collision, said: "The automobile ran up on the crossing and the train scooped it up on the cow-catcher, hitting the car from the right front, which made the right front of the car slide up on the cow-catcher and lift the rear wheels of the automobile on the track, or something like that. The train pushed the automobile down the track a distance of 154 feet, where the automobile struck a bridge which knocked the automobile off the track and loose from the engine. The side of the automobile was crushed." Plaintiff's intestate died a short time after being removed from the scene of the collision. The crossing is 191 feet from the corporate limits of the town of Nashville. The road from

Nashville to Spring Hope, upon which plaintiff's intestate was traveling, was a "much traveled road as a county road, but not as a highway." The train of defendant was composed of an engine, baggage car and one passenger coach.

At the conclusion of plaintiff's evidence there was judgment of nonsuit, and the plaintiff appealed.

*Cooley & Bone, H. S. Ward and Stephen C. Bragaw for plaintiff.*
*Spruill & Spruill for defendant.*

BROGDEN, J. Three questions are presented for decision:

1. Is the failure of a railroad company to maintain a watchman, gates, gongs or other devices at a public crossing in the country evidence of negligence in an action brought by a person injured by collision with a train at such crossing?

2. Was there evidence to be submitted to the jury on the question as to whether the engineer of the train could have stopped before hitting the bridge?

3. Was the statement of the engineer of the train after the collision admissible in evidence?

Upon the first question the plaintiff relies upon *Dudley v. R. R.*, 180 N. C., 34, 103 S. E., 905. The principle of law announced was as follows: "It was not error for the court to permit the plaintiffs to offer evidence that there was no automatic alarm, or gates, at the crossing, and the court properly left it to the jury to say, upon all the attendant circumstances, whether the railroad company was negligent in not erecting gates. It was incumbent upon the defendant to take such reasonable precautions as were necessary for the safety of travelers at public crossings. 22 R. C. L., 988. This was a question of fact for the jury. That the city authorities assented that a watchman should be stationed at the crossing was not conclusive upon the plaintiffs if, in the opinion of the jury upon the evidence, this was not sufficient protection to the public." This language interpreted without reference to the facts upon which the decision was based, perhaps supports the contention of plaintiff that it is the duty of railroad companies to install gates or gongs at all public crossings in the State, and that a failure to comply with this duty would be evidence of negligence in personal injury actions resulting from collisions with trains. However, it appears that the crossing involved was upon a much used street in the town of Washington, and that the vision of the traveler was obstructed by a warehouse. The *Dudley case* was relied upon as an authority in the case of *Blum v. R. R.*, 187 N. C., 640, 122 S. E., 562. In that case *Adams, J.*, concurred in the result, and *Stacy, J.*, while concurring in the result, calls atten-

tion .to the fact that the question of the erection of gongs or gates at public crossings was not before the Court. Both the *Blum* and *Dudley cases* are cited in *Finch v. R. R.,* 195 N. C., 190, but not upon the point involved here. The leading authority cited in the *Blum case* for the position taken was *R. R. v. Ives,* 144 U. S., 408, 38 L. Ed., 485. In that case the Supreme Court of the United States thus declared the law: "It seems, however, that before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must be first shown that such crossing is more than ordinarily hazardous; as for instance, that it is in a thickly populated portion of a town or city; or, that the view of the track is obstructed either by the company itself or by other objects proper in themselves; or, that the crossing is a much traveled one and the noise of approaching trains is rendered indistinct and the ordinary signals difficult to be heard by reason of bustle and confusion incident to railway or other business; or, by reason of some such like cause; and that a jury would not be warranted in saying that a railroad company should maintain those extra precautions at ordinary crossings in the country. The *Ives case* is cited with approval in *Northern Pacific R. R. Co. v. Moe,* 13 Fed., 2nd series, 377, in which it is declared: "While the necessity for a flagman or other warning at a crossing has usually been found by the adjudged cases to exist at railway crossings over busy highways in cities,  .  .  .   the test is the peculiar danger of the crossing, even if it be in a village. See *New York, S. & W. R. Co. v. Moore,* 105 F. 725, 45 C. C. A., 21." The subject is discussed in an extensive note in 16 A. L. R., p. 1273, where all the authorities are assembled and analyzed.

Applying these principles of law to the facts disclosed by the record, there is no evidence of obstruction existing at this crossing; neither is there evidence that the vision of a traveler was obscured by curves, embankments, buildings or other conditions, which rendered the crossing more than ordinarily hazardous, nor does the record disclose any condition of peculiar danger. Therefore, we hold that the failure of the defendant to maintain gates or gongs at this crossing was no evidence of negligence.

The plaintiff contends, however, that if the defendant was not guilty of negligence prior to the collision that the engineer should have stopped the train before the automobile was pushed against the bridge, resulting in the death of intestate. The evidence was that the bridge was 154 feet from the crossing. The question immediately arises: Could the engineer in the exercise of proper care have stopped his train within 154 feet? The only evidence upon this question was the testimony of a witness who had formerly worked for the railroad as fireman, flagman, bag-

BATCHELOR v. R. R.

gagemaster and conductor. He stated that in his opinion "a train running at a speed of 20 or 25 miles an hour and carrying an automobile in front of it could be stopped in around 50 yards. Air-brakes are the means and appliances which are put in operation to stop the train. I know about air-brakes only by hearsay, and I do not know how long it would take to apply them, as I never was an engineer." The burden was upon the plaintiff to show negligence. The train ran 51 yards and 1 foot before hitting the bridge. According to the testimony of plaintiff's witness, it could have been stopped in "around 50 yards" after the brakes were applied. This testimony, in the absence of knowledge as to what length of time would be required to apply the brakes, amounts to no more than conjecture, and conjecture is not evidence.

The plaintiff again insists that certain statements made by the engineer after the automobile had been thrown from the train at the bridge, constituted evidence that no proper lookout was observed. This contention is based upon the evidence of witness Smith, who stated that he was near the depot when the collision occurred. The depot was approximately 800 feet from the bridge. When the witness arrived at the bridge the deceased was being taken from the car. The train "went about 32 or 33 yards by the automobile after it went off the bridge." The witness then went to the engine and found the engineer taking off the broken bumper of the engine. The engineer had just finished removing the bumper and was taking his wrenches to go down under the engine to do some work on the brakes. The testimony of witness is as follows: "When I first walked up he was taking off that piece and I said, 'Capt., it hit a hard lick,' and he said, 'Yes, it broke when it hit that bridge'— talking about the bumper piece. He said that happened when it hit the small bridge and crushed the car. He said he didn't see the man when it hit, but saw him right afterwards, when the automobile fell in front of him. He didn't see him when he hit him, but saw him right afterwards."

The only aspect upon which this evidence would be competent would be upon the theory that the statement of the engineer was a part of the *res gestæ*. The test as to whether a declaration is a part of the *res gestæ* depends upon whether the declaration was the facts talking through the party or the party talking about the facts. The subject is discussed in the following cases: *Harper v. Dail*, 92 N. C., 394; *Bumgardner v. R. R.*, 132 N. C., 438, 43 S. E., 948; *S. v. Bethea*, 186 N. C., 22, 118 S. E., 800; *Young v. Stewart*, 191 N. C., 297, 131 S. E., 735.

We are of the opinion that under the well defined principles of law recognized in this jurisdiction that the statement of the engineer was the narrative by him of a past occurrence, and therefore not a part of the *res gestæ*.

Affirmed.