·RICHARDSON et ux. v. WATSON et al.

No. 5046.

Court of Civil Appeals of Texas.
Texarkana.

April 23, 1937.

Rehearing Denied May 13, 1937.

Wilkinson & Wilkinson, of Mt. Vernon, and J. H. Beavers and Jno. T. Buckley, both of Longview, for appellants.

Wynne & Wynne and Wm. A. Wade, all of Longview, and C. E. Florence, of Gilmer, for appellees.

WILLIAMS, Justice.

Appellant Richardson in November, 1926, acquired by warranty deed from A. F. Shepperd the 35 acres of land involved in this suit, for which he paid $600 cash, executed a $300 installment vendor's lien note to Shepperd, and assumed a $700 lien then held by Texas Mortgage Company. Shepperd retained superior title in the deed to secure the $300 note. Richardson in May, 1927, refinanced the $700 debt, at which time the Federal Land Bank took $400 and Shepperd $300 of it. To secure this last $300 item, Richardson executed a note and deed of trust in favor of Shepperd as beneficiary. In December, 1927, appellants rented this land to Watson, and moved to Hunt county. On January 19, 1928, S. F. Jordan was appointed substitute trustee under the last-mentioned deed of trust, and in such capacity at trustee's sale on February 7, 1928, sold the land to Shepperd. Watson by letter advised Richardson that the land was advertised for sale, and later wrote that Shepperd claimed to be the landlord. In February, 1929, Shepperd conveyed the land to Mrs. Jennie Watson, as her separate estate, and as a part of the total consideration of $1,160 she assumed payment of the $300 vendor's lien note executed by Richardson and the $400 lien held by Federal Land Bank. Richardson never paid any taxes, interest, or any principal except the $600 down payment. From the time he moved to Hunt county, he made no inquiry about the rents. On July 2, 1932, by warranty deed of that date, appellants conveyed to Harris Houston this land in consideration of $500 cash. Three days later Houston conveyed to Mrs. Watson all of the surface and one-half the royalty, and to P. H. Pewitt he conveyed one-half the royalty. In 1931 Southland Royalty Company, an appellee, acquired from Watson one-half the royalty. The holders of leasehold interest and the Pewitt royalty are not involved in this suit. The suit was tried to a jury to cancel the substitute trustee's deed and the deed executed by appellants to Houston. Judgment was entered for appellees.

Appellants assert that notice of trustee's sale was not posted in Gregg and Upshur

counties and that the twenty-one days' notice required by law was not given, and thereby Shepperd not having obtained a valid title could not convey a good title to Watson. The land was situated in both counties and notice was not posted in Upshur county, nor was notice posted in either county for the required twenty-one days. Appellees contend that Richardson having abandoned the place and failed to pay the vendor's lien note, and Shepperd having retained the superior title in the deed, Shepperd had a right to rescind and Shepperd's deed to Watson was a rescission and conveyed a good title. To this, appellants assert that Shepperd having requested sale under his deed of trust, it was an election of remedies, and further that Richardson having paid more than one-third of the purchase price, equity would restrict Shepperd to the remedy of foreclosure on the vendor's lien note. The jury found that appellants had abandoned the property at the time of the foreclosure. The question of innocent purchaser for value was also involved. A witness testified that with a clear title the place including all minerals was worth $100,000 in July, 1932. It is not necessary to discuss these propositions as to the title held by either party to this suit prior to the time the Richardson-Houston deed was executed, for if the Richardson-Houston deed is sustained they become immaterial, except as a background to the question of fraud raised by appellants.

Both appellants testified to what both C. W. Watson and Pewitt represented to them just before they executed the deed to Houston, being practically the same statements and substantially as follows:

After the introduction, Mr. Watson said, "Well, I got your letter the other day and I have come over to talk with you concerning it. We feel like you have lost on the place and I want to satisfy you if I can. I believe you have always been an honest and a truthful fellow and a friend to me, and I hate to see you lose on it, and I hate to have you dissatisfied, and I want to satisfy you if there is any chance. As far as our title is concerned, we are not afraid of our title, that is not what we came for. We have got as good title as we want. We sympathize with you because you have lost on the place.
* * *

"Mr. Watson told me that I did not have no grounds to recover in a lawsuit, and he said, 'As far as I am concerned, I am not able to have a lawsuit.' I said, 'I know I am not able to have one. If there is any way

in the world to satisfy it without a lawsuit, I don't want a lawsuit.' "

Appellants also testified that Mr. Pewitt said, "I am no lawyer, but I happen to know something about land business. I have looked through Mr. Watson's papers and his papers are all right, nothing wrong about them." Both appellants testified that they believed what these two men told them and made the deed believing what they said to be true, and would not have made the deed had not such statements been made. Neither Pewitt nor C. W. Watson testified in this trial. Mrs. Watson was not present at the time the deed was made. It can be said that her husband and Pewitt were her agents at the time and she was bound by their acts.

Three weeks prior to the time the deed to Houston was executed, Richardson wrote a letter to Mr. C. W. Watson. Richardson identified the letter, which is as follows:

"June 6, 1932.
Emory, R. #1.

Mr. Charley Watson

dear sir: I was at Gilmer some while ago and learned that you had bought the place at Gladewater where I lived. I did not know that until then.

I have talked to four different atorneys concerning that place. they all told me that they believe I have a chance there for gain. one especially at Gilmer Mr. Sanders seemed very anxious to take the case on halves, and insisted on me letting him have it, but I did not.

Now Mr. Watson I believe I am rightly due what I have been out on that place, don't you think so? take it to yourself. I guess you know something about what I lost there. all I would ask in a complimise is what I had in it with interest saying nothing of the big gain in the oil business.

I hope you take the matter to heart and work it out between you and Shepperd or some way and offer me a fair complimise without me even thinking of a lawsuit.

there was never no sitation or anything of the kind served on me. the lawyers say that is not legal.

so ans soon and let me know your views. I am bent on getting what I have in that place.

Yours truly

J. G. Richardson."

Mr. Richardson further testified that he had turned all his papers over to Milton Mell, a lawyer at Gilmer, and when he made the deed, he wrote Mr. Mell to turn these

papers over to Mrs. Watson; that Mr. Mell was his lawyer and had told him that he had a good suit there all the time. Richardson admitted that Watson told him at the time the deed was executed there were two oil wells on the farm, but that they were not getting much out of the oil.

The court inquired of the jury if the statements or representations, if any, made by defendant C. W. Watson, at the time of or prior to the execution of the deed to Houston, induced plaintiffs to believe they, plaintiffs, had no title to the land in controversy. A similar issue was submitted as to statements and representations of Pewitt, as well as an inquiry if the combined statements of Pewitt and Watson induced plaintiffs to believe they had no title to the land in controversy. The jury answered all three inquiries in the negative. By various assignments, appellants assert that the court erred in not instructing a verdict for the plaintiffs, contending that the evidence shows without contradiction that the deed from Richardson was obtained by fraudulent representations. Appellants assert: "There being no dispute as to the facts determining the issues, there was no question of fact to be submitted to the jury;" citing Spradley v. Hall (Tex.Civ.App.) 54 S.W. (2d) 1054; Garrett v. Hunt (Tex.Com. App.) 283 S.W. 489, and other cases. In Kirby Lumber Co. v. Temple Lumber Co., 125 Tex. 284, 83 S.W.(2d) 638, 642, Justice Critz expresses the opinion which we feel governs the evidence in this case, to wit: "It is impossible for us to announce any hard and fast standard by which it can always be absolutely determined when a fact is conclusively established so as to present a pure question of law. We can simply say that when the evidence is such that reasonable minds cannot differ as to its verity and inference it presents a law question only." Allison v. Campbell, 117 Tex. 277, 298 S.W. 523, 1 S.W.(2d) 866; Knox v. Brown (Tex.Com.App.) 16 S.W.(2d) 262.

■ The ultimate question as here presented is, Was Richardson deceived and did he believe the representations to be true? He and his wife said they believed them and were deceived. Yet, he admits that his lawyer, Mell, told him he had a good claim. When he wrote his letter to compromise his claim with Watson, he there stated he had consulted four lawyers, and they all told him he had a good claim; that all the lawyers he had consulted told him the sale was not legal; and that lawyer Sanders was very anxious to take the case on halves.

These facts certainly raised an issue of facts. They most surely do not import only one conclusion.

■ We understand the law to be in any case of actionable fraud that it is essential that the party to whom a representation is made should be deceived thereby and believe it to be true. Or, if the representee knew the truth, it is obvious that he was neither deceived nor defrauded, and that any loss he may sustain is not traceable to the representation but is in effect self-inflicted. 26 Corpus Juris, pp. 1134, 1135, and authorities there cited; 20 Tex.Jur. 54; 12 R.C.L. pp. 359, 361, 380. It is unnecessary to discuss the propositions of law in O'Loughlin v. Moran (Tex.Civ.App.) 250 S.W. 774, and Boles v. Aldridge, 107 Tex. 209, 175 S.W. 1052, cited by appellants, for in the instant case it is a question whether appellants believed the representations so made.

Appellants cite Buchanan v. Burnett, 102 Tex. 492, 119 S.W. 1141, 132 Am.St.Rep. 900. The Supreme Court upheld the contention of appellee to the effect that he had the right under the particular circumstances shown there to rely upon the alleged representations of appellants concerning this title, and was under no duty to investigate their truth or falsity and this even if he was in possession of an abstract showing the true condition of the title.

In the instant case, it does not turn on what further steps Richardson should have taken to find out about his title, but what he knew himself from previous consultations and advice as he states he received from four lawyers. And we come right back to the question if in fact he believed and was deceived, or if in fact he made a compromise and took his case out of the hands of his lawyer, Mr. Mell. The jury heard this evidence and observed the witnesses as they testified. They have found against appellants, and we do not feel warranted in setting aside their findings.

■ Mrs. Richardson, one of the appellants, testified that after their talk with Watson and Pewitt, she and her husband retired to another room to consider whether or not to let them have the land. And appellants sought to prove the conversation between them while in the room to themselves. If permitted, Mrs. Richardson would have testified that while in there her husband said to her: "It must be just like Mr. Watson says. I believe it is. I think Mr. Watson is a friend to us and I am just going to accept it, if you are willing." That

she told her husband all right, that she thought it was the best thing to do, and that she believed what Mr. Watson said about it.

Mr. and Mrs. Richardson both had testified that they believed the representations these men made, and would not have executed the deed if they had not been made; and they relied upon the representations. As stated in Fox v. Houston & T. C. Ry. Co. (Tex.Civ.App.) 186 S.W. 852, 853, 855, "We are of the opinion that it cannot be fairly said that its exclusion resulted in any material injury to appellant." Full latitude was allowed her in relating all the details of the transaction and the exclusion of this would not change results of the case.

In Parker v. Schrimsher (Tex.Civ.App.) 172 S.W. 165, on a question of intent in abandonment of a homestead, the husband testified that when he was moving he told his tenants on the farm that he intended to move back. The court in that opinion states that he could testify to his intentions with reference to a return to the property. "It, however, may be a very serious question, even as res gestae whether he could tell others that he intended to return to the property and then, in order to prove such intention, take the stand and testify to what he told them. It certainly ought to receive its setting from some other source; at least a court would feel less hesitancy in receiving it." 22 Corpus Juris, 446, Note (E).

Whether a declaration is a part of the res gestae depends upon whether the declaration was the facts talking through the party or the party talking about the facts. The element of spontaneity we find courses through all acts and statements admissible under the res gestae rule. 17 Tex. Jur. p. 615; 10 R.C.L. 981; Batchelor v. Atlantic Coast Line R. Co., 196 N.C. 84, 144 S.E. 542, 60 A.L.R. 1091.

The matter of admitting particular evidence under the res gestae rule rests largely in the discretion of the trial court, and the appellate court will not interfere with his action unless it is made to appear that he has erred to the prejudice of the complaining party. 17 Tex.Jur. p. 616.

Appellants' eighth proposition is without merit. The trial court did permit appellants to prove any statement theretofore made by Watson anywhere to any one which was against interest.

The tenth and eleventh propositions are without merit. These deal with the testimony of Florence and Wynn, lawyers. The construction of the instruments about which they testified to were not a jury question, but a question for the court.

All parties were represented by able counsel. A jury heard this evidence, observed the witnesses as they testified, and have found against appellants. The learned trial judge refused to set aside the findings, and we do not feel warranted in disturbing same.

The judgment is affirmed.