PHILLIPS, Administratrix, Respondent, vs. THE MILWAUKEE & NORTHERN RAILROAD COMPANY, Appellant.

*September 2 — September 23, 1890.*

*Railroads: Killing of person at sidewalk crossing: Contributory negligence: Failure to see approaching cars.*

Plaintiff's intestate was last seen alive walking beside a switch track in defendant's yard, going eastward towards a street which crossed said yard from north to south. It was a cold and stormy day, and he had a shawl about his head and ears. His dead body was found on the switch track about fifteen feet east of a sidewalk which ran along the west side of said street. Blood was found on the east side of that sidewalk and thence along the track to the spot where the body was found. He had been struck and killed by cars which had passed him going westward and had then been pushed upon said switch track and negligently left to run eastward unattended. Upon the evidence, showing the foregoing facts among others, it is *held* that the jury might properly have found that the deceased, when struck by the cars, was on the sidewalk, where he had a right to be, and that he was not guilty of any contributory negligence in failing to see the cars as they approached him.

APPEAL from the Circuit Court for *Winnebago* County.

Action to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant's employees. The facts are sufficiently stated in the opinion. There was a general verdict in favor of the plaintiff, assessing her damages at $833; a motion for a new trial was denied; and from the judgment entered on the verdict the defendant appealed.

For the appellant there was a brief by *Alfred H. Bright,* attorney, and *Charles W. Felker,* of counsel, and oral argument by *Mr. Bright.* To the point that one who goes upon the track and is struck by a train which is in plain sight when the crossing is attempted, cannot recover either on the presumption that he looked or on his own evidence that he did look, they cited *Marland v. P. & L. E. R. Co.* 123 Pa. St. 487; *Penn. R. Co. v. Mooney,* 126 id. 252; *Carroll*

77 349
77 374

77 349
s9 LRA 521
32 LRA 149n
52 LRA 349n
54 LRA 803n
56 LRA 753n

*v. P. R. Co.* 12 Weekly Notes, 348; *Penn. R. Co. v. Bell,* 122 Pa. St. 58; *Wilcox v. R., W. & O. R. Co.* 39 N. Y. 358; *Grippen v. N. Y. C. R. Co.* 40 id. 35, 51; *Davis v. N. Y. C. & H. R. R. Co.* 47 id. 400; *Reynolds v. N. Y. C. & H. R. R. Co.* 58 id. 248; *Mitchell v. N. Y. C. & H. R. R. Co.* 64 id. 655; *Tolman v. S., B. & N. Y. R. Co.* 98 id. 198, 204; *Benton v. C. R. Co.* 42 Iowa, 192; *Pence v. C., R. I. & P. R. Co.* 63 id. 746; *Bloomfield v. B. & W. R. Co.* 74 id. 607; *Cones v. C., I., St. L. & C. R. Co.* 114 Ind. 328; *Chicago & E. I. R. Co. v. Hedges,* 118 id. 5; *Chase v. M. C. R. Co.* 78 Me. 346; *Rogstad v. St. P., M. & M. R. Co.* 31 Minn. 208; *Brown v. M. & St. P. R. Co.* 22 id. 165, 167; *Schofield v. C., M. & St. P. R. Co.* 8 Fed. Rep. 488; *S. C.* 114 U. S. 615; *Achtenhagen v. Watertown,* 18 Wis. 331; *Rothe v. M. & St. P. R. Co.* 21 id. 256; *Langhoff v. M. & P. du C. R. Co.* 23 id. 43; *Schilling v. C., M. & St. P. R. Co.* 71 id. 255.

For the respondent there was a brief by *Bouck & Hilton* and *Smith & Schoetz,* and oral argument by *Gabe Bouck.*

ORTON, J. In the city of Menasha there are three streets running north and south, viz.: Milwaukee street and, to-

wards the east, Racine street and then Appleton street. The railroad of the appellant company, coming from the west, after it crosses Milwaukee street runs in a south-

easterly direction towards Racine street, and then crosses Racine and Appleton streets in a due easterly direction. The depot grounds lie between Milwaukee and Appleton streets, and the depot buildings are situated between Racine and Appleton streets. From some distance west of Racine street there is a main switch track south of the main track, running east across Racine street; and a short distance east of that switch there is another switch track running east, also across Racine street, and some distance south of the other switch track. The deceased lived northwest of the company's yard, and on the morning of the 4th day of April, 1887, had left his home to go to church on Appleton street, southeast of the yard, through the company's grounds, as he had been accustomed to do. The weather was cold and stormy, and he had on a heavy overcoat, a cap, and a shawl about his face and head. The men doing the switching protected themselves by staying on the engine when not throwing a switch, and the persons usually around the depot were inside. Five loaded cars had been taken from east of Racine street, and two of them were cut off and kicked west on the main line, and the remaining three cars were kicked east on the south switch track, to run unattended over Racine street. The deceased was first seen by the engineer and other employees walking eastwardly on the main track west of the switches, and then again further east on the north side of the main track, and then *lastly* on the south side of the south switch track going towards Racine street. He was met and passed by the five cars going west. There was a sidewalk on the west side of Racine street from Third street south, across both of the switch tracks towards the north. Soon afterwards the crushed and mangled body of the deceased was found partly on the south switch track about fifteen feet east of the sidewalk. The upper part of it was lying south of the south rail and the feet over it. Blood was found on the east side of the sidewalk on the south switch track, and

from there blood was trailed along on the track to where the body was found. Some of the witnesses of the defendant testified to seeing one or two drops of blood about fifteen feet west of the sidewalk on the track; but the witnesses of the plaintiff testified that they examined the track for blood spots at that place, and could not find any. The jury had the right, therefore, to treat such fact as unproved, as they evidently did. It is therefore reasonable to suppose that the deceased was struck by the cars on the sidewalk where it crosses the south switch track, and his body dragged to where it was found.

There being no witness to this painful accident, how the deceased came to be on the sidewalk at that place, and whether walking north or south on it, must be determined, if at all, by circumstantial evidence. The learned counsel of the appellant contends that it is unaccountable how the deceased came to be there, and that it is entirely a matter of conjecture. That may be so, but is it necessary that the plaintiff account for his being on the sidewalk at that time and place? If it is shown that he met his death while walking on the sidewalk, where he had a right to be, that is sufficient for the plaintiff's case, and it is incumbent on the defendant to show that he was guilty of any want of ordinary care in placing himself in that position. It is therefore incumbent on the defendant to account for his being there, and if there is no proof of it, and it is all a matter of conjecture, then it follows that the deceased is presumed to have placed himself where he was killed, with due care, or at least without any want of ordinary care. The learned counsel says in his brief: "Admitting that the deceased had reached that place when struck, is not the manner of his coming there left to conjecture? But verdicts cannot rest upon conjecture." The verdict in this case does not rest on any conjecture as to how he came there. The verdict for the plaintiff rests rather on the fact alone that he was lawfully there, where he had a right to be, when he was killed.

If the manner of his coming there was not shown, then no negligence of the deceased could be predicated upon it. That was the misfortune of the defendant and not of the plaintiff. We will not, therefore, consider the plausibility or otherwise of any of the theories of the learned counsel as to how the deceased came to the place where he was killed.

The main and important question is, Was he struck by the cars while he was on the sidewalk? It seems to be conclusively shown that he was struck and killed at that place. No marks of blood or any traces of his presence on that track, west of the sidewalk, were found. The presumption is that he was struck and killed where the first blood in that direction was found, which was on the sidewalk, and that he was dragged by the car to where his body was found, as the cars were going in that direction. There is no evidence whatever that the deceased walked on the track from the west to the sidewalk, and it is reasonable to conclude that he was walking in the direction of the sidewalk, north or south, for this is the ordinary use of a sidewalk. This is not conjecture, but a reasonable inference or deduction from these known facts. The presumption is that he was making the ordinary use of that sidewalk by traveling on it when he was struck by the car. It would not be a reasonable, but it would be a violent, presumption that he came to the sidewalk from the north while walking on the defendant's track. He would be a trespasser, and do that which was unlawful, to so use the track, and this cannot be presumed. So far, then, the negligence of the deceased is not shown.

The only other evidence of his want of care, it is contended, was the fact that he did not look or listen before crossing the track or attempting to cross it. The contention of the learned counsel of the appellant is that if he had looked he would have seen the cars coming towards that point from the west, and that if he had seen them it

was negligence on his part to attempt to cross the track as he did, and that therefore he did not look, and that he was guilty of a want of ordinary care in not doing so. This contention is correct if there is nothing in the circumstances to excuse his not looking or his not seeing the cars approach, or to mitigate the consequences of such omission. This has been so often decided by this court that I need only to refer to the cases cited in the appellant's brief. It is said that he ought to have looked west for the approach of these cars. Why look west, any more than east. And perhaps he did look east, and seeing none he attempted to cross over. At such a point, where a great deal of switching is done in all directions, out of as well as into side tracks, the deceased may have had greater reason to look east for the approach of cars at that time than in the opposite direction. Let us see. He had been met by the train of five cars attached to the engine just before, and had stepped off the track for them to pass. It is not known that he walked on the track after that. He was last seen walking some distance south of the south switch track towards Racine street. He had reason to suppose that the train he met would pass on towards the west on the main track. It was after he had met the train of five cars going west that the two cars had been detached and kicked west on the main track, and the three remaining cars had been kicked east on the south switch track. Those occurrences took place behind him, and he probably knew nothing of them. He might have well supposed that the train would keep on westwardly, or at least that it would not return to pass down the south side-track. He was thus deceived and thrown off his guard, and had no reason to expect that any of those cars would interfere with his crossing the side-track on the sidewalk, or that they would so soon be sent down that track without any one to look after them or to take care of them. The jury might well have excused the deceased from looking for any of these cars on the south side-

track going east at that time, and have found that he was not guilty of any contributory negligence, under these peculiar circumstances. This view of the case is justified by the late cases of *Ferguson v. W. C. R. Co.* 63 Wis. 145, and *Duame v. C. & N. W. R. Co.* 72 Wis. 523. The jury may also very properly have considered the facts that it was a cold and stormy day, and that the deceased had a shawl about his head and ears, which might have interfered to some extent with his seeing as well as hearing. It was not a day for taking observations, but for keeping straight on. The employees of the road kept themselves protected from the weather on the engine, where they could not look out for these wild detached cars that they had sent down the track, or warn the deceased of their approach. These facts may well modify the rule that it was the duty of the deceased to *look* just at the time when the cars were near him. It may be that he had looked in that direction, but when these detached cars had not yet started on the sidetrack. He is not here to be questioned as to what he did or did not do, and his conduct is entitled to all reasonable probabilities. One thing is certain,— that he did not know that these cars were creeping towards and so near him when he undertook to cross the track.

We think the jury might have properly found, as they did, that the deceased was not guilty of any want of ordinary care, under the circumstances of the case, that contributed to his death.

These are the only controverted questions in the case. The learned counsel of the appellant does not contend that the defendant company was not guilty of a want of ordinary care in thus sending down the track these unguarded cars, and across the traveled streets of the city. We find no errors in the case.

*By the Court.*— The judgment of the circuit court is affirmed.