CHICAGO, M. & ST. P. RY. CO. v. DONOVAN.

(Circuit Court of Appeals, Eighth Circuit. February 27, 1908.)

No. 2,589.

1. RAILROADS—INJURIES AT STREET CROSSINGS IN RAILROAD YARDS—REASONABLE WARNINGS.

Independently of any statute or ordinance upon the subject, it is the duty of a railroad company, when about to send a car over a recognized street crossing in its yards, to exercise ordinary care for the protection of persons who may be using, or about to use, the crossing as a place of travel by giving some reasonable warning of the approach of the car.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 988-1005.]

2. SAME—PERSONS TO WHOM WARNING IS DUE.

The duty just stated is one which the railroad company owes to all persons thus using the crossing, as a place of travel, or about to do so, whether they be strangers or employés.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 1014-1016.]

3. MASTER AND SERVANT—MASTER'S RESPONSIBILITY FOR SERVANT'S ACT DONE IN ACCORDANCE WITH RECOGNIZED, BUT NEGLIGENT, PRACTICE IN MASTER'S SERVICE.

When a negligent practice obtains such a recognized and long-established footing in the master's service that the conclusion is unavoidable that he either has knowledge thereof and acquiesces therein or has not exercised a reasonable supervision over the work of his servants, and one of them is injured by the act of another done in accordance with that practice, the master cannot avoid responsibility on the ground that the negligent act was merely that of a fellow servant.

4. SAME—ASSUMPTION OF RISK—DISTINCTION BETWEEN ORDINARY AND EX-
TRAORDINARY RISKS.

 The rule that a servant assumes all the ordinary risks of the service
in which he engages presupposes that the master will perform all the du-
ties cast upon him for the servant's protection, and therefore embraces such
risks as are incident to the service where those duties are performed, and
not such as arise out of the master's negligence. The latter are deemed
extraordinary risks, and, under a recognized exception to the rule, are
assumed by the servant, if the master's negligence is actually known to
him, or is so plainly observable that he may be reasonably presumed to
know of it, and he then voluntarily enters or remains in the service.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Serv-
ant, §§ 547, 584–585.

 Assumption of risk incident to employment, see note to Chesapeake &
O. R. Co. v. Hennessey, 38 C. C. A. 314.]

Riner, District Judge, dissenting.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District
of Minnesota.

Charles B. Keeler and F. W. Root, for plaintiff in error.

C. D. O'Brien (R. D. O'Brien, on the brief), for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and
RINER, District Judge.

VAN DEVANTER, Circuit Judge. This was an action by Mat-
thew Donovan against the Chicago, Milwaukee & St. Paul Railway
Company to recover for personal injuries sustained by him in a col-
lision with a freight car at a recognized grade crossing in the com-
pany's yard in the western suburbs of Chicago. The yard contained
10 or more parallel tracks extending east and west across a public
street, and numbered consecutively from north to south. One of the
company's freight trains, upon which Donovan was head brakeman,
entered the yard in the early morning, while it was yet dark, and was
backed in on track 6. To make the street clear for travel, the train
was cut or parted at the crossing, the caboose and one or two cars be-
ing put on the east side and the other cars on the west side. The move-
ment of the train was then at an end, but Donovan, before quitting the
yard, was required to report at the caboose, which was 1,500 to 1,700
feet from his post at the head of the train. He was an experienced
railroad operative, but had not been in that yard before. Whether
there was a reasonably safe route to the caboose on the south side of
the train, and whether it was reasonably open to him to walk along the
north side between the train and track 5, are matters in respect of
which the record is silent, save as he testified that some switching in
the west or top end of the yard "blocked us so I had to walk down be-
tween tracks 2 and 3" on the north side. At all events, he took the
north side, crossed over tracks 5, 4, and 3, then walked east between
tracks 3 and 2 to the street, and then turned south along the street to-
ward track 6 upon which the caboose was standing. The center of the
street was planked, and he followed the planking. On track 4, from
two to five car lengths west of the street, was an engine with a bright
headlight facing the street, but that part of the yard was not otherwise

lighted. The engine was about to move, or was moving, a car on track 5 toward the street by the process of staking, which, as there employed, is described in this way: An engine, with a stake attached at one end to its tender or tank, advances alongside the car, when the free end of the stake is swung outwardly into a socket in the rear corner of the car; the engine moves forward and pushes the car along by means of the stake, until the car attains sufficient momentum to carry it to its destination; then the engine stops, the pole drops to its side and the car continues on alone. While they are moving together, the front line of the car is about four feet in advance of the engine. As Donovan turned into the street and walked south he saw the engine and appreciated that it was about to move forward, or was doing so, but he could not see the car, because it was back of the diverging rays of the headlight; and for the same reason he could not see a switchman who was standing upon the rear end of the car. No flagman was at the crossing, no guard or signal light was on the front end of the car, and no effort was made to give a timely warning of its approach to persons who might be passing in the street, but in these respects the work was being done according to the usual and regular practice in that yard. One of the staking crew, who was corroborated and not contradicted, testified:

"There was no signal either by whistle or lantern or in any other way, or any notice given of that car going over the street. There never is. There was no watchman there at that time. * * * The engineer is watching towards the stakeholder back of the engine. * * * He is looking for a sign to know how far he is going to kick the car. His attention is towards the rear. * * * This work we were doing there at this time was done in the usual way, and we have done it that way all the time I have worked there. This stake that is used there is about six feet long. The car does not extend in front of the engine far enough so that the flare of the headlight would strike the corner or the head end of it. The front end of the car would be back of the flare of the headlight."

And another member of the crew testified:

"A man standing on that crossing looking towards the engine with its headlight burning could not see the car. * * * This car that was being staked would make a noise running down, but wouldn't overcome the noise of the engine. The engine would make a greater noise."

Donovan had never met with a practice of staking cars over a public street without giving some reasonable warning to persons who might be passing therein, did not know that such was the practice in that yard, and did not know, or have any reason to believe, that the engine on track 4 was engaged in staking cars. Thinking that the engine might be drawing a long train which would obstruct his approach to the caboose, unless he crossed to the other side, and believing that he could safely take chances on crossing in front of the engine, he hastened along and passed over track 4 in safety, but when he stepped on track 5 he was struck and injured by the car which was being staked, then moving about 12 miles an hour. After he passed in front of the engine, one of the staking crew observed his perilous situation and called out a warning, but it came too late to be of any avail.

Such was the case made by the evidence, when the conflicts therein and in the inferences to be reasonably drawn from different parts of

it are resolved in favor of the party prevailing at the trial. Of the complaint it is sufficient to say that it charged, in substance, that the plaintiff was lawfully passing along the street in going from one part of the yard to another, that he did not and could not see the car or perceive its movement, that the defendant negligently ran it across the street at a high rate of speed without giving any warning of its approach, and that this negligence was the cause of his injuries.

At the conclusion of the evidence the defendant requested the court to direct a verdict in its favor on the grounds, first, that there was no evidence of actionable negligence on its part, and, second, that the evidence conclusively established contributory negligence on the part of the plaintiff. The request was denied, and the court, in the course of its charge, said to the jury, in substance, that it was the duty of the defendant, when about to stake the car over the street, to exercise ordinary care for the protection of persons who might be passing therein by giving some reasonable warning of the approach of the car; that the plaintiff, while passing along the street in going from one part of the yard to another, was as much entitled to this measure of protection as other travelers; and that, if his injuries were caused by a failure on the part of the defendant to exercise ordinary care by giving some reasonable warning of the approach of the car, and there was no contributory negligence on his part, he was entitled to recover. The jury returned a verdict for the plaintiff, judgment was entered thereon, and the defendant now assigns error upon the refusal of its request for a directed verdict, and upon that portion of the charge which declared that the plaintiff, while so using the street, was entitled to the same measure of protection, in the way of a reasonable warning, as other travelers.

At the outset it must be conceded that if the plaintiff, after seeing the engine, observing its proximity to the street, and appreciating that it was about to move toward the crossing, or was doing so, had been injured in attempting to pass in front of it, he would not be entitled to recover. And it must be conceded, also, that if the exercise of ordinary care on his part as he advanced along the street would have necessarily disclosed to him the presence and movement of the car, as was the situation in Chicago, Milwaukee & St. Paul Railway Co. v. Clarkson, 147 Fed. 403, 77 C. C. A. 575, and he had then been injured in attempting to pass in front of it, he would not be entitled to recover. In either event he would have been guilty of negligence directly contributing to his injuries. But neither concession covers this case. The plaintiff was not injured in attempting to pass in front of the engine; he could not see or hear the car which was advancing on the next track; and he did not otherwise have reason to believe that the engine was staking a car at the time. Or, stating the whole of it, he successfully avoided the only danger which was discoverable by a reasonable use of his senses, and sustained injuries from a danger which was not thus discoverable, and which he did not otherwise have reason to expect. Plainly, therefore, the evidence did not conclusively establish contributory negligence on his part. Chicago, Rock Island & Pacific R. Co. v. Sharp, 63 Fed. 532, 11 C. C. A. 337; Texas & Pacific Ry. Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186.

Several contentions are advanced in support of the assertion that there was no evidence of actionable negligence on the part of the defendant, one of them being also the basis of the exception to the instruction before mentioned. Independently of any statute or ordinance upon the subject, it was the duty of the defendant, when about to stake the car over the public street, to exercise ordinary care for the protection of persons who might be passing therein by giving some reasonable warning of the approach of the car. Chicago, Rock Island & Pacific Ry. Co. v. Sharp, supra; Harty v. Central Railroad Co., 42 N. Y. 468; Brown v. N. Y. C. R. Co., 32 N. Y. 597, 88 Am. Dec. 353; Illinois Central R. R. Co. v. Baches, 55 Ill. 379, 384; Dick v. Railroad Co., 38 Ohio St. 389, 396; Delaware, etc., Co. v. Converse, 139 U. S. 469, 473, 11 Sup. Ct. 569, 35 L. Ed. 213; 3 Elliott on Railroads, §§ 1156, 1158. The existence of this duty and its nonperformance are not seriously questioned, but the contention is made that it was a duty which the defendant owed to the ordinary traveling public, and not to one in its service, like the plaintiff. Some color is given to the contention by several cases in which there are general expressions seemingly making such a distinction between the ordinary traveling public and employés, but when these expressions are read in the light of the questions necessarily presented for determination, the cases in which they are found do not do more than to establish that crossing signals, however required, are designed for the protection of persons using or about to use the crossing as a place of travel, and not of those who are neither so using it nor about to do so, such as a man driving a team along a street parallel to the railroad, or an employé working on or near the track some distance from the crossing. There are also cases which seemingly reject such a distinction between the ordinary traveling public and employés (see Illinois Central R. Co. v. Gilbert, 157 Ill. 354, 367, 41 N. E. 724; St. Louis, etc., Co. v. Eggmann, 161 Ill. 156, 159, 43 N. E. 620; East St. Louis, etc., Co. v. Eggmann, 170 Ill. 538, 48 N. E. 981, 62 Am. St. Rep. 400; Pittsburgh, etc., Co. v. Moore, 152 Ind. 345, 350, 53 N. E. 290, 44 L. R. A. 638; Baltimore & O. S. W. Ry. Co. v. Peterson, 156 Ind. 364, 59 N. E. 1044; Bluedorn v. Missouri Pacific Ry. Co., 108 Mo. 439, 446, 18 S. W. 1103, 32 Am. St. Rep. 615; Louisville, etc., Co. v. Martin, 113 Tenn. 266, 87 S. W. 418, 422); but independently of that, we are of opinion that the duty before stated was one which the defendant owed to all persons using or about to use the crossing as a place of travel, whether they were strangers or employés. And this conclusion is, as we think, sustained by these considerations: The crossing was part of a public street, and therefore was a recognized place of travel. One person had the same right to use it as another. The safety of one user was of the same public concern as that of another. And the danger to be avoided threatened all users alike. In short, the reasons for safeguarding travel in the street applied with equal force to all travelers therein.

It is next contended that, as to the plaintiff, the failure to give a reasonable warning was solely the negligence of his fellow servants who were staking the car. But the contention is not well taken. The failure to give such a warning was not peculiar to that occasion, or merely a casual neglect of duty on the part of those who were staking the car,

but was of frequent occurrence at the crossings in that yard, and was in accordance with what counsel for the defendant concede was "a recognized and long-established practice there." One of two conclusions is, therefore, unavoidable. Either the defendant knew of that practice and acquiesced therein, or it neglected to exercise a reasonable supervision over the work of its servants in that yard. In either case its responsibility for the continued existence of that practice is so plain that the acts of its servants done in accordance therewith must, in legal contemplation, be regarded as if done with its sanction.

It is further contended that, as it was the recognized and long-established practice in that yard to stake cars over the street without giving some reasonable warning to persons passing therein, the plaintiff's injuries resulted from an assumed risk. But this contention is also untenable. The rule that a servant assumes all the ordinary risks of the service in which he engages presupposes that the master will perform all the duties cast upon him for the servant's protection, and therefore embraces such risks as are incident to the service where those duties are performed, and not such as arise out of the master's negligence. The latter are deemed extraordinary risks, and, under a recognized exception to the rule, are assumed by the servant, if the master's negligence is actually known to him, or is so plainly observable that he may be reasonably presumed to know of it, and he then voluntarily enters or remains in the service. Texas & Pacific Ry. Co. v. Archibald, 170 U. S. 665, 672, 18 Sup. Ct. 777, 42 L. Ed. 1188; Choctaw, O. & G. R. Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96; Texas & Pacific Ry. Co. v. Swearingen, 196 U. S. 51, 62, 25 Sup. Ct. 164, 49 L. Ed. 382. When the rule and its exception are applied to the case made by the evidence, as before recited, it is plain that the risk which resulted in the plaintiff's injuries was not assumed as an ordinary incident of the service, because it arose out of the defendant's negligence, and was not assumed as an extraordinary risk, because that negligence was neither known to the plaintiff nor plainly observable by him during the short time intervening between his entrance into the yard and the collision.

We think the motion for a directed verdict was rightly denied.

As the exception taken to a portion of the court's charge, before mentioned, merely presents in another form the contention that the plaintiff was not one of those to whom the defendant owed the duty of giving some reasonable warning of the approach of the car, it is sufficiently disposed of by what has already been said on that subject.

The judgment of the Circuit Court is affirmed.

RINER, District Judge, dissents.