GEORGE E. KUNKEL ET AL. v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.

Opinion filed April 29, 1909.

Rehearing June 12, 1909.

### Railroads — Death of Person on Track — Licensee.

1. In an action to recover damages for death of plaintiff's father, caused by a train on defendant's track backing against him while he was on its right of way or track, it is *held,* under the evidence, that deceased was not a trespasser and defendant owed him the duty of ordinary care and diligence to avoid injuring him.

### Same — Death of Person on Track — Contributory Negligence — Question for Jury.

2. *Held,* further, that the questions of the negilgence of defendant and the contributory negligence of the deceased were, under the evidence in this case, for the jury.

### Negligence — Evidence — Presumption of Due Care by Decedent.

3. The law, out of regard to the instinct of self-preservation, will presume, prima facie, that a person who has suffered death by accident was, at the time, in the exercise of ordinary care and diligence, and this presumption is not overcome by the mere fact of the accident, even though no person saw it.

Appeal from District Court, Wells county; *Edward T. Burke, J.*

Action by George E. Kunkel and others against the Minneapolis, St. Paul & Sault Ste. Marie Railway Company. Judgment for plaintiffs, and defendant appeals.

Affirmed.

*Lee Combs, George K. Shaw,* and *Alfred H. Bright,* for appellant.

One walking along a railroad track with the railroad company's invitation as others are permitted to so walk, is a licensee, for whose injury recovery cannot be had unless caused wilfully or by negligence so gross as to imply wilfulness. Heiss v. C. R. I. & P. Ry. Co., 72 N. W. 787; C. C. C. & St. L. Ry. Co. v. Tartt, 64 Fed. 823, 827; Johnson v. B. & M. R. R. Co., 125 Mass. 75; Wright v. B. &. M. R. R. 129 Mass. 440; Wright v. B. & M. R. R., 142 Mass. 296, 300; Sutton v. N. Y. C. & H. R. R. R. Co., 66 N. Y. Rep. 243; Atchison, Topeka & Santa Fe R. R. Co. v. Silas D. Parsons,

42 Ill. App. Ct. 93; Chenery v. Fitchburg R. R. Co., 160 Mass., 211; 22 L. R. A. 575; Daniels v. N. Y. & N. E. R. R. Co., 13 L. R. A. 248; Sheehan v. St. P. & D. Ry. Co., 76 Fed. 201; Ward v. So. Pac. Ry. Co., 25 Or. 433; 36 Pac. 166; Richards v. C. St. P. & K C. Ry. Co., 81 Ia. 42; 47 N. W. 63; Lingenfelter v. Baltimore & C., 154 Ind. 49; Burg v. C. R. I. & P. Ry., 57 N. W. 680.

Conjecture is not evidence. Marvin et al. v. Chicago M. & St. P. Ry., 47 N. W. 1123; Megow v. Chicago M. & St. P. Ry. Co., 36 N. W. 1099; Searles v. Manhattan Ry. Co., 101 N. Y. 661; 5 N. E. 66; Grant v. Penn. & N. Y. Canal & Ry. Co., 133 N. Y., 657; 31 N. E. 220; Taylor v. City of Yonkers, 105 N. Y. 202; 11 N. E. 647; Babcock v. Fitchburg Ry. 140 N. Y. 308, 319; 35 N. E. 596; Orth v. St. P. M. & M. Ry. Co., 50 N. W. 363; Thomas, Negligence, p. 582; The Nellie Flagg, 23 Fed. Rep. 671; Kaveny v. The City of Troy, 15 N. E. 726; Asbach v. Chicago B. & Q. R. R. Co., 37 N. W. 182.

Where the facts and conditions show, that if one had stopped to look with the care that the law imposes, he could have seen the approaching train, the presumption that the injured person, being dead, did his duty, is overcome. P. H. West v. N. P. Ry., 13 N. D. 221; 100 N. W. 254; C. R. I. & P. R. R. Co. v. Houston, 24 U. S. 542; Shalto v. Erie Ry Co., 121 Fed. 678; Freeman v. N. P. Ry. Co., 174 U. S. 763; C. R. I. & P. v. Still, 19 Ill. 508; C. & G. W. Ry. Co. v. Smith, 141, Fed. 930; Guhl v. Whitcomb, Recvr., 85 N. W. 142; Bertelson v. C., M. & St. P., 40 N. W. 531; Reynolds v. G. N. Ry. Co., 69 Fed. 809; Steves v. Oswego & Syracuse Ry. Co., 18 N. Y. 422; Durbin v. Oregon & Nav. Co. Ry., 17 Pac. 5, Atchison, T. & S. F. Ry. Co. v. Withers, 77 Pac. 542; Van Winkle v. N. Y. C. & St. L. Ry., 73 N. E. 157; Morford v. C. I. & L. Ry. 63 N. E. 857; Rollins v. C., M. & St. P. Ry. Co., 139 Fed. 639; Carleson v. C. & N. W. Ry. Co., 105 N. W. 555.

Where there are two ways, one safe the other hazardous, to choose the latter is negligence. Gulf & C. R. Co., v. Mathews. 15 Tex. Ct. Rep. 957; 93 S. W. 1068; Coy v. Mo. Pac. Ry. Co., 96 P. 468.

*J. J. Youngblood* and *George A. Bangs,* for respondent.

If a railroad company permits the use of a path across its tract for years, it assumes the duty of reasonable care in the operation of its trains up to and over such track, including such signals and

watchmen as might be reasonably necessary. Union Pacific Railway Co. v. Connolly, 109 N. W. 368; Bishop v. C. M. & St. P. Ry. Co., 4 N. D. 536; 62 N. W. 605; Coulter v. Gt. N. Ry. Co., 5 N. D. 568; 67 N. W. 1046; Johnson v. Gt. N. Ry. Co., 7 N. D. 284; 75 N. W. 250; Reifsnyder v. C. M. & St. P. Ry. Co., 57 N. W. 692; Schindler v. Co., 49 N. W. 670; Barry v. Milwaukee L. & S. V. W. Ry. Co., 92 N. Y. 289; 13 A. & E. R. Cas. 615; Byrne v. New York Cent. & H. R. R. Co., 10 N. E. 539; Swift v. Staten Island R. T. R. Co. 123 N. Y. 645; 25 N. E. 378; Troy v. Cape Fear & Y. V. R. Co., 99 N. C. 298; 6 S. E. 77; 6 A. S. R. 521; 34 A. & E. R. Cas. 13; Harriman v. Pittsburgh C. & L. R. Co., 45 Oh. St. 11; 12 N. E. 451; 4 A. S. R. 507; 32 A. & E. R. Cas. 307; Taylor v. Co., 8 Atl. 143; 57 A. R. 446; 28 A. & E. R. Cas. 656; Kay v. Co., 65 Pa. St. 269; 3 A. R. 628; O'Connor v. Co. 155 Mass. 52; 15 A. & E. R. Cas. 362; Co. v. Trautman (Pa.) 6 A. & E. R. Cas. 117; Kelly v. Southern Minn. R. Co., 28 Minn. 98; 9 N. W. 588; Indiana B. & W. Ry. Co., v. Barnhart, 16 N. E. 121.

Backing a train over a railroad crossing without signals where there are a fierce raging blizzard and flying snow is negligence.

Bailey v. Co., 107 Mass 469; Co. v. Rice, 10 Kan. 426; Co. v. Proctor, 14 Kan. 37; McWilliams v. Co., 31 Mich, 274; Robinson v. Western Pacific Ry. Co., 48 Cal. 409; Linfield v. Co., 10 Cush. 564; Co. v. Garry, 58 Ill. 85; Co. v. Ebert, 74 Ill. 399; Eaton v. Erie Railway Co., 51 N. Y. 544; Barry v. Co. 92 N. Y. 289; MaGinnis v. The New York C. & H. R. Ry. Co. 52 N. Y. 215; McGovern v. The N. Y. C. & H. R. Ry Co., 67 N. Y. 417; 2 Thompson on Negl., Sec. 1571.

The law presumes that one, who suffered death by a railroad accident was at the time of it in the exercise of due care. Cameron v. Gt. N. Ry. Co., 8 N. D. 124; 77 N. W. 1016; Co. v. Landrigan, 191 U. S. 461; Cooley on Torts (3rd Ed.) 1428, et seq; McWilliams v. Co., 31 Mich. 274; Tiepel v. Hilsendegen, 44 Mich. 462, 7 N. W. 82; Atchison, T. & S. F. R. Co. v. Morgan, 22 Pac. 995; Shaber v. St. Paul, Minn. & M. Ry. Co., 9 N. W. 575; Salter v. The Utica and Black River R. R. Co., 59 N. Y. 631; Mares v. N. P. R. Co., 3 Dak. 336, 21 N. W. 5; Johnson v. The Hudson River Ry. Co., 20 N. Y. 65, 75 A. D. 375; Co. v. Spike, 121 Fed. 44, 57 C. C. A. 384; Adams v. Iron Cliffs Co., 78 Mich. 271, 44 N. W. 270; Ill. Cent. R. Co. v. Nowicki, 46 Ill. App. 566; 148 Ill 29; Schum v. Co., 107 Pa. St. 8, 52 A. R. 468; Cox v. Co., 123 N. C. 604, 31 S.

E. 848; Cox v. Wilmington, 74 Pen. 162, 53 Atl. 569; C. B. & Q. R. Co. v. Gunderson, 174 Ill. 495, 51 N. E. 708; B. & O. S. W. Ry. Co. v. Then, 159 Ill. 535; Chicago City Ry. Co. v. Fennimore, 99 Ill. App. 174, 199 Ill. 1, 64 N. E. 985; Steele v. N. P. Ry. Co., 57 Pac. 820; Dalton v. C. R. I. & P. Ry Co., 73 N. W. 349; Little v. Grand Rapids St. Ry. Co. 44 N. W. 137; Keim v. Co., 90 Mo. 314, 2 S. W. 427; 7 West. Rep. 144.

Circumstantial evidence is sufficient if it establish the probability of Plaintiff's theory. 1 Greenleaf on Ev. 13a; U. S. Y. Co., v. Conoyer, 59 N. W. 950; Affirming Same Case, 56 N. W. 1081; Co. v. Cox. (Tex.), 55 S. W. 354, re-hearing denied in 56 S. W. 97; Co. v. Kine (Tex.) 54 S. W. 240; Hughes v. Co., 104 Ky. 774, 48 S. W. 671; Norfolk Beet Sugar Co, v. Burnett, 75 N. W. 839; Duerst v. Co., 63 S. W. 827; Union Bridge Co. et al., v. Teehan, 60 N. E. 533.

CARMODY, J.    This is an action brought by minor children, who are represented by a guardian, and by adult children to recover damages for the death of their father, Wm. A. Kunkel, whom it is claimed was negligently struck and fatally injured by one of defendant's trains. The trial court denied defendant's motion for a directed verdict, and submitted the question of its liability to the jury. There was a verdict for plaintiffs, and judgment accordingly. The court denied defendant's motion for a judgment notwithstanding the verdict. Thereupon judgment was duly entered in favor of plaintiffs and against the defendant. From which judgment this appeal was taken.

The defendant's main track passes through the city of Fessenden in a general east and west course, the depot being situated on the north side thereof and about the center of the city. Next south of the main track is the passing track, and south of that the house track. The depot and most of the platform is situated between Fifth and Sixth avenues, which are located north of the track. The residence portion of the city is mostly northeast of the depot, and constitutes what is called the "North Side." The business portion of the city is mostly southwest and on the south side of defendant's tracks, and constitutes what is called "South Side." The streets of the city run east and west parallel with defendant's tracks and the avenues north and south. The highway running at right angles and about 125 feet west of defendant's depot is Fifth avenue and

Maple avenue, one being a continuation of the other; the part north of the railroad tracks is called "Fifth Avenue," and the part south of said tracks is called "Maple Avenue." These two avenues are connected across defendant's tracks and right of way, and the crossing kept open. This is the main business street of the city. The depot grounds are 300 feet wide, and on either side running east and west is a street known as "Railway Street." About four or five years ago the road supervisor built a walk, bridge, or stile from the northeast or residence portion of the city nearly along the east line of Sixth avenue where the same intersects Railroad street, crossing a piece of low ground to the east end of the depot platform and mostly on defendant's right of way. It was mostly used by pedestrians passing between the depot and the residence portion of the city.

The public generally for several years previous to the time the accident occurred had traveled daily across and along the defendant's tracks or right of way in said city of Fessenden; the usual route being about as follows: From the east line of Sixth avenue where the same intersects Railroad street across the stile or bridge hereinbefore mentioned across the right of way to a point near the east end of the depot platform; thence west along the platform to some point west of the depot; thence diagonally across the tracks and depot grounds to the northeast corner of Maple avenue. Sometimes they would walk west a short distance, from 12 to 50 feet, on the main track, and thence diagonally across the depot grounds to Maple avenue. This route for the most part was used by people who went from the residence portion on the North Side to the post office and business places on the South side and vice versa. The depot platform extended west of the depot about 25 or 30 feet. There were no steps on the south side or west end of the platform. At the west end of said platform there was an apron sloping to the ground, from which there was at the time of the accident a fairly well-defined path, on the north side of the main track west to Fifth avenue, over which people sometimes traveled to the sidewalk on Fifth avenue; thence south across the tracks to Maple avenue or north to their destination, as the case might be. Deceased sometimes traveled that route in going to the post office or business portion of the city on the South Side. There was at the time of the accident a path, though not very well defined, across the main track from the north rail, and crossing the south rail at the place where deceased was found after the accident.

The defendant had never objected to the use of its right of way, depot ground, and railway tracks, and never took any steps to prevent it. There was a walk on the east side of Maple avenue, but no connection except a pathway between that walk and the west end of the depot platform. The post office was located south of the tracks on the east side of Maple avenue. Deceased frequently visited the depot. He had knowledge of the trains, the time they were due, was thoroughly familiar with the locality and all the conditions. On Sunday, November 18, 1906, there was a severe and blinding snowstorm. The wind was strong and blowing from the northwest. It blew in gusts, sometimes stronger than at other times. Passenger train No. 105, which was a mail train going west, arrived at the depot at 1:15 o'clock and left at 1:17 o'clock in the afternoon. At about 1:20 or 1:25 o'clock p. m. deceased came into the depot and inquired if train No. 105 was in, and the operator answered, "Yes; it has gone." Whereupon deceased said "All right," and went out of the depot. At 1:30 or 1:35 o'clock p. m. he was found at a point about 48 feet from the west end of the depot platform, and about 52 feet east from the railroad crossing on Maple and Fifth avenues. He was found lying on the south rail of the main track with his legs over the rail, facing up and straight away from the track. One leg was cut off and left near the north rail; the other was almost cut in two. He had on no cap. It had rolled off. He had on a fur or fur-lined overcoat, and the collar was turned up around his ears. There was no obstruction whatever between the crossing on Maple and Fifth avenues and the east end of the yards. At the time train No. 105 going west was at the depot, there was an extra freight train on the passing track going east. After train No. 105 passed, the freight train pulled up to the east end of the yards, and part of it, consisting of the engine and 12 cars, backed west down the main track, passing the depot just after deceased went out, and passed the spot where he was found. The evidence does not show whether there was a lookout or brakeman on the back end of the freight train. The freight train as it was backing up was seen and heard by at least four persons—the operator, Mr. Ritt, and the agent, Mr. Gordon—who were in the depot at the time it passed by, and Wm. Jackson, who was going down Sixth avenue. He saw it first when he was on the north side of Railway street, a distance of about 150 feet from the tracks. He walked up closer to the track,

and waited until the train backed out of his way, and then crossed the track at the east end of the depot platform and went to the post office. He could see the train when it passed to the west end of the yards, but heard no signal of any kind. Fred Kortbin, who was walking south on Fifth avenue toward the railroad tracks, also saw the freight train backing up when he was at the telephone office, a distance of 336 feet north of the tracks. After it had backed past the crossing 100 feet or so it stopped, and a brakeman ran to the place where Mr. Kunkel was lying. The witnesses heard no whistle or bell ring or signal of any kind. Witness Kortbin heard the train running when he was at the telephone office, and said it must have been going four, five, or six miles an hour. Wm. Jackson said he thought it was running five or six miles an hour. Mr. Ritt, the telegraph operator, said it was running about three miles an hour. The injured man was taken to the office of Dr. McGregor, and died in about three-quarters of an hour after he was taken there. On examination it was found that one of his feet was cut off and the other almost severed. The upper parts of his legs were broken and crushed, and there were numerous lacerations. The wounds were more prominent, and more readily distinguishable, on the front side of the body than on the rear. The theory of the plaintiffs is that while deceased was walking upon the main track—probably crossing it—he was struck by the backing train which was going in the same direction he was, and that he fell to the track and was run over.

The theory of the defendant is that the company is not liable: "(1) Because the evidence in this case fails to show that there was a pathway traveled, or other passageway, as alleged in the complaint, either established by, or suffered and permitted by, the defendant, and upon which the deceased was either impliedly or expressly, invited to pass at the time of his injury, and that from the facts in this case it appears that he was upon the railroad track of the defendant as a trespasser to whom the defendant owed no duty, except that of not willfully injuring him, of which willful or reckless injury there is no claim in the complaint nor proof in the evidence. (2) Because it appears from the evidence that if the deceased was rightfully upon the right of way or railway track of the defendant at the time declared in the complaint, or at the time he was injured, he was there as a mere licensee, since the place was not, as shown by the evidence, a public highway, and the defendant owed him no duty except that of not willfully or recklessly injuring him, because

the evidence shows he was upon business of his own, or there for
his own convenience, and there is no evidence tending to show that
he was there for the purpose of transacting business with the de-
fendant company, and since there is no allegation of willful or reck-
less injury, or proof of such facts, no recovery can be had. (3)
Because all the evidence in this case shows as a matter of law that
the deceased was guilty of contributory negligence, which precludes
a recovery on behalf of plaintiffs in this case, and because the plain-
tiffs have failed to show by the evidence any negligence on the part
of the defendant which would entitle the plaintiffs to recover." And
because the evidence as to how the accident occurred is in the field
of conjecture.

If any of the defendant's contentions is sustained, then the judg-
ment appealed from must be reversed. If the deceased was a tres-
passer on its tracks, or right of way, the defendant owed him no
duty except not to willfully, wantonly, or recklessly injure him, and
there is no allegation or proof of such willful or reckless injury.

It is plain that deceased was not a trespasser. The uncontradicted
testimony is to the effect that for many years immediately pre-
ceding the accident it had been the custom of people proceeding
from the north to the south side of defendant's tracks in the city of
Fessenden, and vice versa, to use the right of way, platform, and
tracks as a footpath, and that a large number of people passed that
way daily. This custom was known to appellant, and it made no ob-
jection. About four or five years before the accident, the road
supervisor built a walk, bridge, or stile from the northeast or resi-
dence portion of the city along the east line of Sixth avenue, where
the same intersects Railroad street to the east end of the depot plat-
form, and mostly on its right of way. This walk, bridge, or stile
was largely used by pedestrians who also crossed at other places
nearby, and who also walked along the track where deceased was
injured. The deceased, who resided in the northeast part of the
city, was in the habit of passing daily across this stile or bridge and
over defendant's platform, right of way, and along and over its
tracks to the post office and places of business on the South Side,
and back to his residence. The defendant having knowledge of
the use of this route, and of the building of the bridge, or stile, and
of persons passing over it, and having made no objections there-
to, will be presumed to have assented to it, thus giving to all who
traveled this route license therefor. Deceased, therefore, was not

a trespasser upon the railroad track, and was entitled to all the rights and protection of one rightfully upon it, with license of the defendant. The plaintiffs can recover for his death if it was caused by injuries resulting from defendant's want of ordinary care if deceased did not contribute thereto by his own negligence. In support of these views, see the following cases: Swift v. Staten Island R. R. Co., 123 N. Y. 645. 25 N. E. 378; Taylor v. Del. Canal Co., 113 Pa. 162, 8 Atl. 43, 57 Am. St. Rep. 446; O'Connor v. B. &. L. R. R. Corp., 135 Mass. 352; Ry. Co. v. Troutman, 6 Am. &. Eng. Ry. Cas. 117; Harriman v. Ry. Co., 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. Rep. 507; Byrne v. N. Y. Cent. R. R. Co., 104 N. Y. 362, 10 N. E. 539. 58 Am. St. Rep. 512; Barry v. N. Y. Cent. Ry. Co., 92 N. Y. 289, 44 Am. Rep. 377; Schindler v. Mil. Ry. Co., 87 Mich. 400, 49 N. W. 670; Clampit v. Chicago & R. I. Ry. Co., 84 Iowa, 71, 50 N. W. 673; L. & N. Ry. Co. v. Schuster (Ky.) 7 S. W. 874; Kay v. Pa. Ry. Co., 65 Pa. 269, 3 Am. Rep. 628; Troy v. Cape Fear Ry. Co., 99 N. C. 298, 6 S. E. 77, 6 Am. St. Rep. 521; Reifsnyder v. R. R. Co., 90 Iowa, 76, 57 N. W. 692; Davis v. Chicago Ry. Co., 58 Wis. 646, 17 N. W. 406, 46 Am. Rep. 667; Ahnefeld v. Wabash R. R. Co., 212 Mo. 280, 111 S. W. 95; Calwell v. Mpls. & St. Louis Ry. Co., 138 Iowa, 32, 115 N. W. 605; Mo. K & T. Ry. Co. v. Malone (Tex. Civ. App.) 110 S. W. 958; Fuller v. R. R. Co., 78 Mich. 36, 44 N. W. 1085; Roth v. Union Depot Co., 13 Wash. 525, 43 Pac. 641, 44 Pac. 253, 31 L. R. A. 855; Kelly v. R. Co., 28 Minn. 98, 9 N. W. 588.

In Swift v. Ry Co., supra, the court of Appeals of New York lays down the following rule: Where the public have for a long time, notoriously and continuously, been in the habit of crossing a railroad at a point not in a traveled public highway, with the acquiescence of the railroad company, such acquiescence amounts to a license, and imposes a duty upon the company, as to all persons so crossing, to exercise reasonable care in the running of its trains so as to protect them from injury.

In Clampit v. Ry Co., supra, the plaintiff, a carpenter, in going from his house in Des Moines to the place where he was employed in the same city was accustomed to cross defendant's railway. The crossing of the railway was at a place much used by pedestrians, just at the foot of a bluff or bank which was approached by a stairway constructed by persons using the footway. While crossing the railway when going to his work, according to his custom, he was

struck by an engine and seriously injured. There was a ditch be-
tween the stairway and the track over which were railroad ties.
Pedestrians also crossed at other places. Chief Justice Beck of the
Iowa Supreme Court said: "The stairway and the ties crossing the
ditch, as well as the path made by footmen, prominently advertised
the place as a crossing used by pedestrians." We have carefully
examined the cases cited by appellant, and the majority of them
we think can be easily distinguished from the case at bar. In most
of them the injury was caused by the passive negligence of the de-
fendant, or by its omission to perform or act; as for example,
in Sutton v. N. Y. Cent. & Hudson River Ry. Co., 66 N. Y. 243.
The deceased was employed in the carpenter shop of the Clinton
foundry situate west, and adjacent to defendant's tracks and road-
way in the city of Troy, and was in the habit, with other employes,
of crossing defendant's tracks, over which there was a regular
beaten path. He started out of the carpenter shop with a pail to go
to a well across the tracks for some water. As he went out of the
door, 5 cars passed northward on the west track—nearest the shop.
These cars had been disconnected from a train of 10 cars; the en-
gine and other cars, giving them, as they were disconnected, a
"shove" or "kick," which sent them north so far that the south car
was nearly opposite the door of the shop where they stopped. Sut-
ton then started across the track. He crossed the west track, but
was stopped by the approach of a train on the east track, and, look-
ing to the east, he stepped backward upon the track he had just
crossed. At that point there was a slight down grade in the tracks
toward the south. The five cars had in consequence, after stopping,
started back slowly of themselves to the southward, and, as Sutton
stepped backward, they struck and killed him. There was a brake-
man on the five cars, as they passed, who attempted to apply the
brake, but failed to set it so as to arrest the motion of the cars.
When they stopped he left the cars, and there was no one in charge
of them when they moved backward. It had been defendant's daily
custom for years to back up and shove cars on the west track in the
same way. The brake was usually applied to such disconnected
cars. No instance had ever been known before of their thus run-
ning backward of themselves. The court, speaking through Judge
Andrews, said: "I think that the evidence did not establish a cause
of action against the defendant; that, although Sutton was a licensee,
the defendant was not liable for the omission of the brakeman to

adjust the brake before leaving the car. He could not have anticipated danger to life from the slow movement of the cars a few feet down the grade. In most of the other cases cited by appellant the party injured was either a trespasser or was guilty of contributory negligence, and, in some of the cases, of gross negligence. Under the evidence in the case at bar, we deem the question of defendant's negligence, and plaintiff's contributory negligence, was for the jury."

It is contended by appellant that, under the evidence, the deceased was, as a matter of law, guilty of negligence which bars recovery in this action. It contends that, from the evidence, it is clear that he could have seen the train if he had looked along the track from the depot platform, and that it was his absolute duty to do so. No person saw the accident. The deceased, a very short time before the accident, stepped into the depot, and inquired if train No. 105 had gone, and was told that it had. He then left the depot, and started in a westerly direction along the path or right of way, and a short time after was found at a point where a path used by pedestrians crossed the south rail of defendant's main track. The day was stormy. He was facing the storm. The train backed down the main track in the center of the city towards the only public crossing through a blizzard and storm, with a heavy snow falling and a high wind, such as would undoubtedly obstruct the vision and hearing of any one upon the track or crossing, and such as would also tend strongly to deaden and muffle the sound of wheels, and as far as the evidence shows, without giving any signal, and without any brakeman or lookout on the back end of the cars. If the defendant had had some one on the train on top of the back end of the cars, or upon the ground, to warn persons on the track or crossing of its approach, the accident might not have happened.

If there is any substantial conflict in the testimony in a negligence case either as to defendant's negligence, or as to the contributory negligence of the person killed or injured, and where different minds might reasonably draw different conclusions as to these questions from the evidence, the case must go to the jury. In this case the jury must have found that defendant was negligent, and there is sufficient evidence to sustain such finding. Ry. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 489; Ry. Co. v. Lowell, 151 U. S. 209, 14 Sup. Ct. 281, 38 L. Ed. 136; Jones v. Ry. Co., 128 U. S. 433, 9 Sup. Ct. 118, 32 L. Ed. 480; Dunlop v. Ry Co., 130

U. S. 652, 9 Sup. Ct. 647, 32 L. Ed. 1058; Richmond Ry. Co. v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, 37 L. Ed. 642; R. R. Co. v. Landrigan, 191 U. S. 461, 24, Sup. Ct. 137, 48 L. Ed. 262; Hendrickson v. G. N. Ry. Co., 49 Minn. 245, 51 N. W. 1044, 16 L. R. A. 261, 32 Am. St. Rep. 540; Ill. Cent. Ry. Co, v. Ebert, 74 Ill. 399. The jury having found the accident was caused by the negligence of the defendant, it must bear the consequence, unless deceased was guilty of contributory negligence. Schwananfeldt v. C., B. & Q. Ry. Co., 80 Neb. 790, 115 N. W. 285; Coulter v. G. N. Ry. Co., 5. N. D. 568, 67 N. W. 1046; Ry. Co. v. Ebert, 74 Ill. 399; Pendroy v. G. N. Ry. Co. 17 N. D. 433, 117 N. W. 531.

In Ry. Co., v. Ebert, supra, the accident happened on the grounds of the company, on a cold, blustering, snowy day in January—a day on which one exposed to its blasts would use all the expedients at his command to ward off, or at least temper, its severity. Ebert was employed hauling ice, and was muffled up to protect himself from the cold, going along at a slow pace with his load. On his route were several tracks of the defendants, which it was necessary for him to cross. These tracks, or some of them, ran into Buckingham's elevator, and as he was about crossing track No. 2, so-called, about 40 feet from the elevator, a train of cars, not drawn, but propelled from the rear by an engine, ran into the wagon, pushed the horses and plaintiff into the elevator, killing the horses, and seriously injuring the plaintiff. There was no outlook upon the train, no flagman at the crossing, and no means used by the servants of the company to apprise plaintiff of the approach of the train, though one or two witnesses testified the bell was rung. It does not appear that plaintiff made any special effort to see if any train was approaching on that track. He says he saw cars on it, but they were not in motion. The Supreme Court of Illinois said: "It was great negligence of the company in failing to have some person on the train on top of the forward cars, or upon the ground in front. It is no excuse that the day was cold and stormy, and that a person posted on the top of the cars would be exposed to danger. It is the duty of the servants of the company to expose themselves to danger when necessary, not to rush into danger recklessly, but to maintain their post, let what may happen. Had a vigilant man been on the front car, it is not at all probable this accident would have occurred. Indeed, it is quite certain it would not. The accident, then, having been occasioned by the negligence of the com-

pany, they must bear the consequences—they must respond in damages."

In Pendroy v. G. N. Ry. Co. (N. D.) 117 N. W. 531, supra, the defendant backed one of its trains against plaintiff's automobile at a public crossing in the city of Towner. The testimony tends to show that plaintiff and his party had been riding around Towner during the evening, and did not see any train or engine; that, as they came down Main street to a point where they could view the track between the two elevators, they looked and saw no train coming; that as they approached the track, and when about 10 feet south of the southerly track, the gear of the automobile was changed from high speed to low speed, and at this time they were listening for any sound of the train. The driver of the automobile said that she neither saw nor heard any signs of the train, and proceeded to cross the track. This court, speaking through Judge Fisk, said: "We believe that, under the weight of authority and the better considered cases, that they cannot be held guilty of contributory negligence as a matter of law merely because they did not stop and listen before crossing the defendant's tracks. A person is bound to use care commensurate with the known or reasonably apprehended danger; but it is only in exceptional cases that the trial court is justified in taking from the jury the question of the exercise of such care. The fact that, if the automobile had been stopped, the occupants might have heard the approaching train, and thus have avoided the accident, is not decisive of their negligence. Fairminded men might honestly differ, under all the facts as disclosed by the evidence, whether the exercise of such precaution was exacted of them." The court further said: "That it was within the province of the jury to say whether plaintiff and his daughter, at and just prior to the accident, were in the exercise of such care as an ordinarily prudent person would be expected to exercise under the like circumstances. In other words, it cannot be said as a matter of law that they, or either of them, were guilty of contributory negligence."

In B. & P. Ry. Co. et al. v. Landrigan, supra, the plaintiff's intestate, Thos. Landrigan, was going through the yards of the defendant company in the city of Washington, D. C., between 11 and 12 o'clock at night. No person saw the accident. There were four tracks through the yard. Just after a Pullman car passed over the

crossing, a party came right along behind the car, and saw the deceased lying on the south side of the outside rail of the most southerly track. He had both legs cut off, and death resulted a short time afterwards. Defense was contributory negligence. The Supreme Court of the United States, speaking through Mr. Justice McKenna, said; " In the absence of all evidence tending to show whether the plaintiff's intestate stopped, looked, and listened before attempting to cross the south track, the presumption would be that he did. But that presumption may be rebutted by circumstantial evidence, and it is a question for the jury whether the facts and circumstances proved in this case rebut that presumption, and, if they find that they do, they should find that he did not stop and look and listen; but if the facts and circumstances fail to rebut such presumption, then the jury should find that he did so stop and look and listen. In order to justify them in finding that he did not, all the evidence tending to show that should be weightier in the minds of the jury than that tending to show the contrary." "There was no error in instructing the jury in the absence of evidence to the contrary. There was a presumption that the deceased stopped, looked, and litsened. The presumption is founded on a law of nature. We know of no more universal instinct than that of self-preservation; none that so insistently urges us to guard against injury."

Under the facts in this case, the question of the negligence of the deceased contributing to the accident was clearly for the jury, as the burden is upon the defendant to prove that the negligence of the deceased contributed to the accident. The law, out of regard to the instinct of self-preservation, will presume, prima facie, that a person who has suffered death by accident was at the time of the accident in the exercise of ordinary care and diligence, and this presumption is not overcome by the fact of the accident even though no person saw it. Ry. Co. v. Landrigan, supra; Flynn v. Ry. Co., 78 Mo. 195, 47 Am. Rep. 99; T. & P. Ry. Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186; Ry. Co. v. Morgan, 43 Kan. 1, 22 Pac. 995; Teiple v. Hilsendgen, 44 Mich, 462, 7 N. W. 82; Adams v. Iron Cliff Co., 78 Mich. 271, 44 N. W. 270, 18 Am. St. Rep. 441; R. R. Co. v. Nowicke, 46 Ill. App. 566; Ry. Co. v. Gunderson, 174 Ill. 495, 51 N. E. 708; Dalton v. Ry. Co., 104 Iowa, 26, 73 N. W. 349; Keim v. Ry Co., 90 Mo. 314, 2 S. W. 427; Phillips v. Ry. Co., 77 Wis. 349, 46 N. W. 543, 9 L. R. A. 521.

There was no error in submitting the question of defendant's negligence and deceased's contributory negligence to the jury. To discuss the authorities cited by appellant on the question of contributory negligence would extend this opinion to an unwarranted length, and would serve no good purpose. We have examined all of them, and cannot see that they are applicable to the facts in this case. From what we have already stated in this opinion it is apparent that there is no merit in appellant's contention that as to how the accident occurred is in the field of conjecture. We, however, cite on that question Union Stock Yards v. Conoyer, 41 Neb. 617, 59 N. W. 950; Phillips v. R. R. Co., supra, 77 Wis. 349, 46 N. W. 543, 9 L. R. A. 521; Lillstrom v. R. R. Co., 53 Minn. 464, 55 N. W. 624, 20 L. R. A. 587.

Dr. McGregor stated in his testimony: "I have in my experience examined wounds upon men which I knew to have been inflicted by being crushed or run over by a car, and these were just such wounds as are inflicted by car wheels. These wounds were inflicted by an injury which required great force." These must have been inflicted from behind, and it required great force to inflict them. "There would be one cut here, another cut here (indicating), and part of the flesh crushed in places and flattened out where the bones protruded; you could feel they were crushed underneath and broken in numerous places. These wounds were such as I have seen caused by car wheels."

We fail to find any prejudicial error in the record. The order denying defendant's motion for a judgment notwithstanding the verdict was properly denied. The judgment appealed from is affirmed.

ELLSWORTH and FISK, JJ., concur. MORGAN, C. J., not participating.

SPALDING, J. (dissenting.) As a general proposition I have no quarrel with the statement of the rule as contained in the third paragraph of the syllabus, namely, that the law, out of regard to the instinct of self-preservation, will presume that the person who has suffered death by accident was, at the time, in the exercise of ordinary care and diligence, and this presumption is not overcome by the mere fact of the accident, even though no person saw it. But under the facts disclosed by the evidence in the case at bar, I am satisfied that this rule is not applicable in the present instance.

Several witnesses testified as to the severity of the storm at the time the accident occurred. The train which killed the deceased could be seen for some distance. One witness testified that he saw it 336 feet distant. Another saw it at a distance of 150 feet at the exact time of the accident. Others testified in a general way that they could see across the street, and others greater distances. That it was incumbent upon the deceased to exercise care proportionate to the atmospheric and other conditions cannot be questioned. Did he do so? It is clear to me that the evidence establishes beyond question that he cannot have done so. It was his duty to look and listen even though he had been on the highway. If he had looked and listened it is obvious that he could have seen the train, and, at the rate of speed at which it was moving, could either have avoided stepping on the track, or, if on it, could have got off. The fact that he was killed under the circumstances disclosed by the evidence makes it apparent that he did not look and listen, or use ordinary precaution or such care as was incumbent upon him to use, and therefore I am of the opinion that the evidence discloses affirmatively that he was guilty of contributory negligence, as a matter of law.

I therefore dissent.

## ON REHEARING.

CARMODY, J.    A rehearing was granted in this case, and elaborate and exhaustive oral arguments were made on both sides. It was strenuously contended by the appellant that the deceased was as a matter of law guilty of contributory negligence. After carefully reconsidering the case, we adhere to our former opinion. We think, under the facts, the question of the negligence of deceased contributing to the accident was clearly for the jury. It is true that two witnesses saw the train a few minutes previous to the accident —one of them at a distance of 150 feet, and the other one at a distance of 336 feet. Both of them were looking at the train broadside and from the north, while the storm was from the west, and deceased was facing it. The evidence also showed that the snow came in gusts, sometimes stronger than at other times. In Re St. L. & Sam Fran. R. R. Co. v. Cundieff, 171 Fed. 319, Judge Amidon well says: "The rule which declares that when the 'physical facts' show that the traveler must have discovered the train if he had looked and listened his negligence becomes a matter of law can properly

be applied only when the physical facts are themselves unambiguous."

The train was backing down through the city, in a snow storm, toward a public crossing. No bell was rung or whistle sounded. There was no lookout on the back end of the train, and no flagman near the crossing. The defendant was, under the evidence, clearly negligent. Deceased had a right to presume that warning of the approaching train by ringing the bell, sounding the whistle, or by a lookout would be given to pedestrians. As stated in our former opinion, no one personally witnessed the accident, and the presumption is that the deceased used all ordinary care. The burden of proof is on the defendant to show that he did not. No exceptions were taken to the instructions of the court, so it is presumed that proper instructions were given. In Continental Improvement Co. v. Stead, 95 U. S. 161, 24 L. Ed. 403, the court says: "It is the duty of railroads to notify the public by some warning of the approach of their trains to crossings, and that if no warning is given which appeals clearly either to the eye or ear, the traveler cannot be held guilty of contributory negligence in failing to discover the train."

In addition to the cases cited in the original opinion we cite the following: Texas & Pac. Ry. Co. v. Cody, 166 U. S. 606, 17 Sup. Ct. 703, 41 L. Ed. 1132; B. & O. R. R. Co. v. Griffith, 159 U. S. 603, 16 Sup. Ct. 105, 40 L. Ed. 274; D., L. & W. R. R. Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213; C., R. I. & Pac. R. R. Co., v. Sharp, 65 Fed. 532, 11 C. C. A. 337; McGhee v. White, 66 Fed. 502, 13 C. C. A. 608; C., M. & St. P. Ry. Co. v. Donovan, 160 Fed. 826, 87 C. C. A. 600; Henavie v. N. Y. C. & H. R. Ry. Co., 166 N. Y. 281, 59 N. E. 901; Judson v. Cent. Vt. R. R. Co., 158 N. Y. 597, 53 N. E. 514; Zwack v. N. Y., L. E. & W. R. R. Co., 160 N. Y. 362, 54 N. E. 785; Smedis v. R. R. Co., 88 N. Y. 13; French v. R. R. Co, 116 Mass 537; Canning v. R. R. Co., 168, N. Y. 555, 61 N. E. 901. The foregoing authorities sustain our views herein expressed.

FISK and ELLSWORTH, JJ., concur. MORGAN, C. J., not participating.

SPALDING, J. I find no reason to change my dissent filed with the original opinion.